2004 VT 17

## In re Estate of Gerald Thomas Cote
## (Teresa Cooper, Appellant)

[848 A.2d 264]

No. 03-025

Present: **Amestoy, C.J., Dooley, Johnson, Skoglund and Reiber, JJ.**

Opinion Filed February 13, 2004

*Deborah T. Bucknam*, St. Johnsbury, for Appellant.

*Janet L. Franklin* of *Law Office of David H. Perrin*, Fairfax, for Appellee.

¶ 1. **Amestoy, C.J.** Appellant Teresa Cooper seeks reversal of the Franklin Superior Court's order affirming the Franklin Probate Court's disallowance of her deceased fiancé's nuncupative will. We affirm.

¶ 2. The superior court disposed of appellant's claims by summary judgment; we therefore employ the same standard on appeal. *Mellin v. Flood Brook Union Sch. Dist.*, 173 Vt. 202, 211, 790 A.2d 408, 417 (2001). If no genuine issue of material fact exists, and any party is entitled to judgment as a matter of law, the court may properly enter summary judgment. V.R.C.P. 56(c). The relevant undisputed facts are as follows.

¶ 3. In July 1998, the decedent Gerald Thomas Cote executed a will disposing of his property that conforms to statutory requirements. See 14 V.S.A. § 5 (will must have signature of three witnesses who sign in presence of each other and testator). After Cote's wife died, he reestablished a relationship he had with appellant many years earlier. Eventually, Cote gave appellant a diamond ring, and they planned to marry.

¶ 4. In December 2000, Cote wrote and signed a handwritten will while he sat alone at appellant's kitchen table. He brought the document to Edna Sauvigney, appellant's mother, and declared to her that it was his will and that he wanted appellant "to be taken care of" after he died. Sauvigney signed the will. Cote gave it to her, along with the key to his safety deposit box. He asked Ms. Sauvigney to keep the will safe and to deliver it to appellant if anything happened to him. In September 2001, without having married appellant, Cote died. At the time of his death, Cote's personal property was worth well over $200.

¶ 5. The present dispute arose when appellant filed the December 2000 will with the probate court following Cote's death. The probate court disallowed the December 2000 document, and concluded that Cote's 1998 will was valid as his last will and testament. Appellant appealed to the superior court, and now to this Court, claiming the December 2000 will is a valid nuncupative will, or in the alternative, it is a valid holographic will. She argues that because the December 2000 will is valid and supersedes Cote's original 1998 will, the probate court should have allowed it and not the earlier will. We disagree.

¶ 6. Whether the December 2000 document is a valid will depends on its conformance to Vermont's nuncupative will statute. The statute provides:

A nuncupative will shall not pass personal estate when the estate thereby bequeathed exceeds the value of $200.00, nor shall such will be proved and allowed, unless a memorandum thereof is made in writing by a person present at the time of making such will, within six days from the making of it, nor unless it is presented for probate within six months from the death of the testator.

14 V.S.A. § 6.

¶ 7. Appellant claims that 14 V.S.A. § 6 unambiguously allows a nuncupative will to pass an estate in excess of $200 as long as it is put in writing within six days and presented to probate within six months. Appellant argues that, according to an exception to the "last antecedent rule," the presence of the comma before the word "unless" requires that the clause "unless a memorandum thereof is made in writing" modify not just the immediately preceding phrase, but also the first clause. Appellant thus suggests that the statute provides: "A nuncupative will shall not pass personal estate when the estate thereby bequeathed exceeds the value of $200.00 unless a memorandum thereof is made ... nor unless it is presented for probate within six months . . . ." To construe the statute otherwise, appellant argues, renders the clause beginning with "unless" superfluous.

¶ 8. Under appellant's reading of the statute, Cote's nuncupative will is valid even though his personal estate is worth more than $200 because it substantially conforms to the statute's requirements for proof and admission. The will was written and affirmed in the presence of a witness, Sauvigney, and appellant filed it within six months of Cote's death.

¶ 9. The superior court found, however, that the statute was not ambiguous "when its words are given their plain and ordinary meaning, particularly in light of the readily evident intent of the Legislature." The court interpreted § 6 as allowing a nuncupative will to be effective only when all the conditions are met: (1) the will must relate to personal property; (2) the personal property must be worth no more than $200; (3) someone present when the testator made the will must prepare a memorandum of it within six days; and (4) the probate court must receive the memorandum within six months of the testator's death. Under the superior court's interpretation, the statute does not apply to Cote's will, since Cote's estate does not meet the $200 limitation requirement.

¶ 10. When interpreting a statute, our principal objective is to implement legislative intent. *State v. Read*, 165 Vt. 141, 147, 680 A.2d 944, 948 (1996). Where legislative intent can be ascertained on its face, the statute must be enforced according to its terms without resort to statutory

construction. *Derosia v. Book Press, Inc.*, 148 Vt. 217, 222, 531 A.2d 905, 908 (1987). Here, however, both parties' interpretations are plausible, and therefore we must ascertain legislative intent through consideration of the entire statute, including its subject matter, effects and consequences, as well as the reason and spirit of the law. See *Paquette v. Paquette*, 146 Vt. 83, 86, 499 A.2d 23, 26 (1985). All relevant parts of the applicable statutory scheme are to be construed together to create, if possible, a harmonious whole. See *Holmberg v. Brent*, 161 Vt. 153, 155, 636 A.2d 333, 335 (1993).

¶ 11. Vermont's nuncupative will statute is one of three statutes dealing with the creation of testamentary instruments. Those provisions can and should be construed in harmony with each other. See *Munson v. City of S. Burlington*, 162 Vt. 506, 509, 648 A.2d 867, 869 (1994) ("[S]tatutes relating to the same subject matter should be construed together and read in pari materia, if at all possible."). When 14 V.S.A. § 6 is read in context with the other two statutes, its purpose becomes apparent. Section 5 establishes the general requisites for a valid will: in order to pass any real or personal estate, a will must be in writing, signed by the testator, and witnessed by three individuals. The obvious purpose of such provisions is to supply ample evidence of the decedent's testamentary intent and capacity and to prevent fraud.

¶ 12. Sections 6 and 7, as exceptions to the general requisites for proper execution, must be of more limited application than the general rule. Section 7 allows individuals in the military to create soldier's wills in order to bequeath wages and personal property when they are engaged in "actual military service," i.e., when the circumstances may make compliance with formal execution and probate requirements difficult, if not impossible. Significantly, this provision, unlike § 6, does not limit the size of the personal estate that can be passed. As the superior court noted, "the additional restrictions and limitations included in § 6, as to nuncupative wills generally, must be accorded their evident purpose, as the Legislature was (and remains) obviously capable of providing for more liberal allowance of oral wills if that is the lawmakers' choice." That "evident purpose" is to provide an alternative, less formal testamentary instrument for small bequests only.

¶ 13. If we interpreted § 6, as appellant urges, to permit an oral will to pass estates of any size, the safeguards against fraud provided by § 5 would be easily defeated, rendering the section superfluous. Because we presume that legislative language is inserted advisedly and not intended to create surplusage, *Payea v. Howard Bank*, 164 Vt. 106, 107, 663 A.2d 937, 938 (1995), we decline to construe 14 V.S.A. § 6 in this manner.

¶ 14. Under appellant's interpretation of the statute the possibilities of fraudulent claims against wealthy estates would be great. Since § 6 does not even require the testator's signature for the will to be proved, alleged beneficiaries of estates with significant assets would be able to contest a duly executed will by presenting a purported nuncupative will, delaying the probate process and forcing the courts to engage in extensive factfinding to determine the validity of the claim. It is difficult to believe that the Legislature intended to impose detailed evidentiary requisites under 14 V.S.A. § 5, only to defeat them by allowing such lax standards for the execution of nuncupative wills, which can be proved only through prolonged hearings. We presume that "the Legislature does not intend an interpretation that would lead to absurd or irrational consequences." *Braun v. Bd. of Dental Exam'rs*, 167 Vt. 110, 117, 702 A.2d 124, 128 (1997).

¶ 15. We note that although no real property was at issue in this dispute, the probate court construed § 6 to limit the use of nuncupative wills solely to the bequest of personal property. The provision is ambiguous, because it makes no reference to the disposition of real property. From this silence it is possible to infer that the statute does not impose any limits on the use of nuncupative wills to pass real estate, or that the statute does not apply to real property at all. To resolve the ambiguity, we must ascertain legislative intent through consideration of the whole statutory scheme. See *Paquette*, 146 Vt. at 86, 499 A.2d at 26. Any implication of allowance of nuncupative wills for real property leads to a construction of the exception that conflicts with the general rule established in § 5, which specifically provides the requirements for passing real estate. Such interpretation is contrary to our preference to construe all relevant parts of the statutory scheme to create a harmonious whole. See *Holmberg*, 161 Vt. at 155, 636 A.2d at 335; *Munson*, 162 Vt. at 509, 648 A.2d at 869. Further, it is irrational to conclude that the Legislature intended to strictly limit the size of personal estate that can pass by nuncupative wills, but permit such wills to pass real estate property of any size, thereby undermining the evidentiary safeguards against fraud erected in § 5. We presume that the Legislature did not intend an interpretation of the nuncupative will provision that would lead to such an irrational result. See *Braun*, 167 Vt. at 117, 702 A.2d at 128. Therefore, we agree with the probate court's interpretation of § 6 as applicable to personal property only.

¶ 16. Our construction thus continues the long accepted interpretation of the Vermont statute as limiting the right to dispose of property by a nuncupative will to personal property with a value of $200, or less. See

*Fisher v. Kimball*, 17 Vt. 323, 328 (1845) ("By statute, in this State, the right to dispose of real and personal estate is put upon the same ground, with the exception of nuncupative wills of personal estate to the value of two hundred dollars . . . ."); 1 Restatement (Third) of Prop: Wills and Other Donative Transfers § 3.2 stat. note 2 (1999) (interpreting 14 V.S.A. § 6 as limited to personal property less than $200); I. Redfield, Leading American Cases & Notes Upon the Law of Wills .694 (1874) ("[I]n Vermont, the amount of property allowed to be . . . disposed .of [by nuncupative will] is limited to two hundred dollars. . . ."); J. Schouler, Law of Wills § 365 n.2 (1887) (Vermont is "[a]mong the States which treat nuncupative wills of property beyond a specified amount as invalid.").

¶ 17. This interpretation is also consistent with statutory schemes in other jurisdictions. Twenty-one jurisdictions provide for nuncupative wills, and all impose significant restrictions on such wills. See 1 Restatement (Third) of Prop: Wills § 3.2 stat. note 3 (listing state statutes and requisites). The overwhelming majority limit its use to personal property, and most impose a low cap on the monetary value of the estate that can pass. See *id.* In sum, no jurisdiction has a statute comparable to appellant's construction of the Vermont statute, that would permit an estate of virtually any size to pass through a nuncupative will. The superior court correctly limited the application of 14 V.S.A. § 6 to personal estates not exceeding the value of $200.

¶ 18. In the alternative, appellant claims that Cote's December 2000 will is a valid holographic will. The validity of a holographic will, that is, one that is written in the testator's handwriting, is ascertained by reference to statutory authority:

> Although handwriting provides superior evidence of genuineness, handwriting does not serve the protective and cautionary policies, nor does it serve the evidentiary values associated with having attesting witnesses observe and participate in executing the will. Accordingly, the legislature's decision to recognize holographic testation represents a determination to accept a lower level of formality.

1 Restatement (Third) of Prop: Wills § 3.2 cmt. a.

¶ 19. Vermont does not have a statutory provision for holographic wills, and from this silence it is logical to infer that the Legislature does not intend to exempt such handwritten wills from formal execution requirements. Accordingly, in *In re Moon's Will*, 107 Vt. 92, 99, 176 A. 410, 413 (1935), we held that a handwritten will must strictly adhere to statutory requirements, and its proponent bears the burden to prove that

it was duly executed. See also *Adams v. Field*, 21 Vt. 256, 270 (1849) (handwritten will held to be valid because it was signed by the testator, attested by three witnesses in his presence, and published by him as his last will). To be valid in Vermont, a will, and any amendment to it, must be signed by three witnesses in the presence of the testator and one another. 14 V.S.A. §§ 5, 11. There is no dispute in this case that the document Cote executed in December 2000 does not comply with these requirements. There was no error below.

*Affirmed.*