Ran-Mar, Inc. V. Town of Berlin (2005-311)

2006 VT 117

[Filed 17-Nov-2006]


 NOTICE: This opinion is subject to motions for reargument under
 V.R.A.P. 40 as well as formal revision before publication in the Vermont
 Reports. Readers are requested to notify the Reporter of Decisions,
 Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801 of
 any errors in order that corrections may be made before this opinion goes
 to press.


 2006 VT 117

 No. 2005-311


 Ran-Mar, Inc., R & G Properties II, Inc. Supreme Court
 and R & G Properties III, Inc. On Appeal from
 v. Washington Superior Court


 Town of Berlin and Joadi Tracey, Treasurer May Term, 2006
 and Collector of Current and Delinquent 
 Taxes of the Town of Berlin

 Matthew I. Katz, J.

 Kathleen B. O'Neill and Philip H. White of Wilson & White, P.C.,
 Montpelier, for Plaintiffs-Appellants.

 Marikate E. Kelley and Philip C. Woodward of Woodward & Kelley, PLLC, South
 Burlington, for Defendants-Appellees.


 PRESENT: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

 
 ¶ 1. BURGESS, J. This case arises out of a group of tax sales by
 the Town of Berlin to satisfy delinquent tax payments for properties owned
 by three related corporate entities: Ran-Mar, Inc.; R & G Properties II,
 Inc.; and R & G Properties III, Inc. (collectively, "taxpayers"). 
 Taxpayers challenged the Town's actions, claiming that the Town exceeded
 its statutory taxing authority under 32 V.S.A. 5254(a) by collecting
 "interest" and "penalties" through the tax sales and by retaining the
 excess proceeds from the tax sales during the redemption period. Taxpayers
 also claimed that the Town's retention of the proceeds was an
 unconstitutional taking. The superior court granted the Town's motion for
 summary judgment. We affirm.

 ¶ 2. Taxpayers owned a number of properties in the Town of Berlin. 
 After the taxes on several of taxpayers' properties became delinquent, the
 Town gave notice of tax sales on seven of the properties. The notices
 stated that in order to prevent the tax sale taxpayers would have to pay
 the Town the principal on the delinquent taxes, any accrued interest,
 penalties, legal fees, and costs, before the date of the tax sale. 
 Taxpayers did not pay the amount due to the Town, and the tax sales were
 conducted. Following the tax sales, taxpayers requested that the Town
 provide an accounting of the sales and turn over to taxpayers the amount
 collected in excess of the taxes, costs, and fees owed by taxpayers. The
 Town responded that it intended to hold the proceeds of the tax sales until
 the expiration of the one-year statutory redemption period. Taxpayers
 brought suit in Washington Superior Court to set aside the tax sales and
 challenge the Town's retention of the tax sale proceeds during the period
 of redemption. (FN1) Taxpayers moved for judgment on the pleadings. The
 Town moved for dismissal or, alternatively, for summary judgment. The
 court granted the Town's motion for summary judgment, upholding the tax
 sales and the Town's authority to hold the proceeds until the end of the
 redemption period. This appeal followed.
 
 ¶ 3. Taxpayers argue that the tax sales were invalid because the
 Town's notices demanded that taxpayers pay accrued interest and penalties
 to prevent the tax sales. Taxpayers contend that the Town is not
 authorized to collect interest or penalties through tax sales under 32
 V.S.A. 5254(a), which provides: "When the tax with costs and fees is not
 paid before the day of sale, the real property on which the taxes are due
 shall be sold to pay such taxes, costs and fees." Taxpayers claim that the
 language "taxes, costs and fees" does not include "interest" or "penalties"
 as demanded by the Town. Taxpayers also argue that the Town had no right,
 statutory or otherwise, to hold the excess proceeds of the tax sale during
 the period of redemption and that to do so was an unconstitutional taking
 of their property.

 ¶ 4. First, we address taxpayers' contention that the Town exceeded
 32 V.S.A. 5254(a) by collecting interest on the delinquent tax principal
 by way of tax sale. Taxpayers argue that the Town cannot collect interest
 on delinquent taxes because interest is not specifically listed in 
 5254(a). The superior court held that interest is considered to be an
 element of the tax obligation itself, and therefore did not need to be
 specifically listed in the statute to be collectible through tax sale. 
 
 ¶ 5. In construing a taxing statute, like all statutes, our
 primary goal is to implement the intent and purpose of the Legislature. In
 re Loyal Order of Moose, Inc. Lodge # 1090, 2005 VT 31, ¶ 8, 178 Vt. 510,
 872 A.2d 345. If a statute's meaning is plain on its face, we enforce it
 according to its terms. Id. "When the meaning of a statute is in doubt, we
 determine its intent from a consideration of the whole and every part of
 the statute, the subject matter, the effects and consequences, and the
 reason and spirit of the law." Boutin v. Conway, 153 Vt. 558, 562, 572
 A.2d 905, 907 (1990) (internal quotations omitted). We construe all parts
 of the statutory scheme together, where possible, as a harmonious whole, In
 re Estate of Cote, 2004 VT 17, 10, 176 Vt. 293, 848 A.2d 264, and "[w]e
 will avoid a construction that would render the legislation ineffective or
 irrational." In re Southview Assocs., 153 Vt. 171, 175, 569 A.2d 501, 503
 (1989). Any remaining ambiguities are resolved against the taxing power
 and in favor of the taxpayer. Loyal Order of Moose, 2005 VT 31, ¶ 8.

 ¶ 6. The Legislature authorized municipalities to collect interest
 on overdue taxes through 32 V.S.A. § 5136. Viewing the statutory scheme as
 a whole, we conclude that the Legislature intended interest authorized
 under § 5136 to be included as an element of the obligation collectible by
 tax sale under § 5254(a), or by other statutory means of property tax
 collection. Section 5136 does not specify a method by which the interest
 shall be collected, and no express mention of tax interest is made in most
 of the sections governing property tax collection. See 32 V.S.A. 
 5221-27 (collection of taxes by action at law); id. 5251-63 (collection
 of taxes by sale of real estate); id. 5140 (collection of taxes from the
 estate of the deceased). Without some method to collect the interest, §
 5136 would be rendered ineffective. The only statutory method of
 collection that expressly uses the word "interest" is found in 32 V.S.A. §
 5141, which authorizes collection of delinquent taxes from the earnings of
 municipal employees. It would be an irrational result and contrary, we
 believe, to the intent of the Legislature if towns could collect the
 interest to which they are entitled under § 5136 only if the tax was owed
 by municipal employees or voluntarily paid by the taxpayer. Cf. Boutin v.
 Conway, 153 Vt. 558, 562, 572 A.2d 905, 907 (1990) (holding that a late
 payment penalty was part of the tax due itself, and that refusal to issue a
 driver's license based on failure to pay the penalty was valid, in part
 because "a contrary interpretation would lead to the irrational result that
 the commissioner would be unable to collect the penalty"). Thus, we
 conclude that in order to give effect to the interest-collection provision
 of § 5136, the Legislature intended interest authorized under § 5136 to be
 included as an element of the obligation collectible by tax sale under §
 5254(a), or by other statutory means of property tax collection.
 
 ¶ 7. Taxpayers cite Clace v. Fair for the proposition that
 "[i]nterest and penalties are only incidental" to a delinquent tax and are
 not inherent to collection of the tax itself. 129 Vt. 573, 574, 285 A.2d
 705, 706 (1971). In Clace, this Court held that tax collectors were not
 authorized to bring suit for penalties and interest when the principal tax
 obligation, although delinquent, had already been paid to, and accepted by,
 the town. Id. at 574, 285 A.2d at 705-06. We find Clace inapplicable for
 several reasons. First, the assessment of interest in the present case was
 not brought by an individual collector as a subsequent action after
 satisfaction of the underlying taxes owed, as was the case in Clace. The
 collection authority of towns is not constrained in the same manner as that
 of an individual tax collector. See Id. at 574, 285 A.2d at 705
 (construing 32 V.S.A. §§ 5221, 5222). Second, a post-Clace statutory
 amendment raises doubt about Clace's continued validity and further
 supports our conclusion that the Legislature intended to allow collection
 of interest by tax sale or other collection means. Under current law,
 "[t]he acceptance of full or partial payment of overdue taxes . . . shall
 not preclude the town from collecting any unpaid balance of taxes and any
 interest and collection fees accruing to the town, whether relating to the
 collected or uncollected portion of taxes." 32 V.S.A. § 5142 (originally
 enacted by 1985, No. 91). Thus, satisfaction of the tax obligation in this
 case by means of a tax sale and subsequent redemption does not preclude
 collection of interest and fees as in Clace.

 ¶ 8. We next address taxpayers' argument that the Town's demand of
 "penalties" is not authorized by § 5254(a). The superior court determined
 that the "penalties" listed in the notice from the Town was not actually a
 penalty, but the eight percent collector's fee authorized by 32 V.S.A. §§
 1674, 5258. "Fees" are explicitly collectible by tax sale under § 5254(a). 
 The Town's use of the term "penalties" to refer to the collector's fee does
 not invalidate the tax sale, nor does it prevent the Town from collecting
 the fee. (FN2) The purpose of the notice is to inform the taxpayer that
 the property is to be sold, so that the taxpayer can prevent the sale by
 paying the delinquent taxes. Chester Motors, Inc. v. Koledo, 146 Vt. 357,
 358, 503 A.2d 551, 552 (1985). The notice was clear enough to inform
 taxpayers of the sale, and of the amount properly due.
 
 ¶ 9. Finally, we address taxpayers' argument that the Town's
 retention of the excess proceeds from the tax sale was unauthorized by
 statute and amounted to an unconstitutional taking. (FN3) While noting
 that Vermont's taxing statutes make no provision for the disposition of the
 surplus proceeds during redemption, the superior court concluded that
 taxpayers had no right to the proceeds during the redemption period and
 that no taking had occurred. We agree.

 ¶ 10. Taxpayers who wish to redeem their property have one year from
 the time of the tax sale to pay the town the amount owed plus additional
 interest of one percent per month on the price paid by the buyer. 32
 V.S.A. § 5260. During this one-year redemption period the taxpayer
 maintains possession and use of the property and the purchaser does not
 take title. Id. During this time there has been no transfer of the
 property; the transaction is not yet completed.
 
 ¶ 11. The redemption statutes are silent concerning disposition of
 the tax sale proceeds pending redemption. No taxpayer right to such
 proceeds during that time is created by statute. There is no conveyance of
 the land to anyone during redemption, so no proceeds appear due to the
 taxpayer absent transfer of title. Until title is conveyed, the delinquent
 taxpayer is not entitled to any proceeds because no property has been
 forfeited until that time. (FN4)
 
 ¶ 12. For these reasons, taxpayers' argument that the retention of
 the proceeds was an unconstitutional taking also fails. There is no
 taking, actual or implicit, because the Town neither took property away
 from taxpayers, nor deprived taxpayers of the economic use of their
 property. Taxpayers had full use, possession and title of the property
 throughout the redemption period. Taxpayers' argument that the Town
 refused to "return" or "give back" the excess proceeds demonstrates the
 inherent flaw in its takings argument. The proceeds from the sale,
 incomplete until the passage of the redemption period, came from the buyer,
 not taxpayers, so that nothing was taken or received from taxpayers for
 the Town to return. At the end of the redemption period, if taxpayers had
 failed to redeem the property and title had been conveyed, the excess
 proceeds would have been turned over to them; otherwise, the proceeds would
 have been returned to the buyer.
 
 ¶ 13. Taxpayers cite Bogie v. Town of Barnet, 129 Vt. 46, 270 A.2d
 898 (1970), in support of their argument that the combination of the Town's
 retention of the proceeds while charging interest at a rate of one percent
 per month in order to redeem, is an unconstitutional taking. In Bogie we
 held that a taking occurred when the Town of Barnet conducted a tax sale in
 which the town bought the property for $848.67 and, after the redemption
 period passed, sold the property for $5,314. Id. at 46-47, 49, 270 A.2d at
 899, 900-01. The Town's actions here are not analogous to the Town of
 Barnet's actions in Bogie. In Bogie, the town received a windfall by
 acquiring the property at the tax sale and subsequently selling it and
 retaining the excess proceeds for itself after the redemption period. Id.
 at 48-49, 270 A.2d at 900. Here, the Town received no such windfall; the
 additional interest that accrued during redemption is not retained by the
 Town, but is paid over to the buyer as required by 32 V.S.A. § 5260. 
 Taxpayers characterize the Town's actions as denying them the money they
 are due and charging interest on that money at the same time. This
 argument again mischaracterizes the facts and the statutory redemption
 scheme. Taxpayers are due nothing for nothing. The one percent per month
 interest applies only if taxpayers redeem the property, and that interest
 is then paid over to the tax sale buyer who has invested money for a chance
 to purchase the property. It is the expectant buyer, not the Town, who
 receives the one percent per month interest on the full amount the buyer
 was required to commit for up to a year for the mere possibility of
 acquiring the property. Unlike the situation in Bogie, where the property
 was unredeemed and ultimately sold, here there was no conveyance to a
 buyer, no loss to the taxpayer, and no windfall to the town. Bogie is
 entirely inapposite to this case.

 Affirmed.


 FOR THE COURT:



 _______________________________________
 Associate Justice
 ------------------------------------------------------------------------------

 Consenting
 
 ¶ 14. DOOLEY, J., concurring. I concur in the majority opinion,
 and write only to add that the Town can, and often should, return the
 excess proceeds to the taxpayer when it receives them. It is undisputed
 that the Town will receive no more money for the delinquent taxes, and
 their collection costs, whether it retains the excess proceeds until the
 redemption period ends or it distributes them when it receives them. 
 Further, it is undisputed that under our decision in Bogie v. Town of
 Barnet, 129 Vt. 46, 270 A.2d 898 (1970), the economic benefit of the excess
 proceeds must go to the taxpayer, whether or not the taxpayer redeems. 
 Finally, it is undisputed that if the taxpayer wants to redeem, it will
 have to pay the purchaser the purchase price plus statutory interest to
 make the purchaser whole. This must occur whether or not the excess
 proceeds are distributed, although, if they are not, the taxpayer can use
 them as part of the amount paid to the purchaser.

 ¶ 15. Under these circumstances, at least in the simple case as this
 one was, the Town has no clear reason to retain the excess proceeds, and
 there are reasons not to. It is likely that a taxpayer who is defaulting
 on payment of taxes has other unpaid creditors who will draw the Town into
 litigation to reach the excess proceeds. Returning the excess proceeds may
 be sufficient to keep the taxpayer's business alive with commensurate
 economic activity and jobs in the town. 

 ¶ 16. In its brief, the Town responds that returning the excess
 proceeds may be acceptable in simple cases, but that it isn't in the Town's
 interest when there are mortgage or attaching creditor interests in the
 real estate, and these persons have the power to redeem, or when there is a
 risk of challenge to the tax sale. I agree that the Town should not return
 the proceeds without the consent of the mortgagee, (FN5) but in many cases
 the mortgagee is likely to give consent because the excess proceeds can be
 used to pay the mortgage debt. I don't understand how distributing the
 proceeds hurts the Town's position if the tax sale is declared invalid. 
 The taxpayer cannot regain clear title without restoring the purchase price
 to the buyer after the invalid sale. 
 
 ¶ 17. I understand the view put forward by the Town, and apparently
 accepted by the majority, that it is unfair for the taxpayer to retain the
 equity of redemption, possession of the land, and the proceeds of the sale
 at the same time. While that view of fairness protects the legality of the
 Town's action in holding the excess proceeds, it does not make that action
 wise. 


 _______________________________________
 Associate Justice


------------------------------------------------------------------------------
 Footnotes


FN1. Taxpayers state on appeal that they have since redeemed all properties
 sold at the tax sales by paying the town the amount owed plus interest at
 12% per annum on the tax sale price as provided for under 32 V.S.A. § 5260.

FN2. The better practice, however, is for towns to refer to the collector's
 fee as a fee in their notices to taxpayers.

FN3. The term "excess proceeds" from a tax sale refers to the amount that
 the buyer at the sale paid less the amount owed to the Town by the
 taxpayer.

FN4. Justice Dooley opines in his concurrence that, under certain
 circumstances, it may be wiser for towns to turn over the anticipated
 surplus to the taxpayer in advance of finalizing the conveyance. This may
 be correct, but absent any affirmative obligation to do so, it is properly
 left for the town to determine the risks and benefits of paying the
 taxpayer before title is conveyed.

FN5. The statute gives the right to redeem only to the owner and the
 mortgagee. 32 V.S.A. § 5260. The Town notes, however, that notice of the
 sale must also be given to each "lien holder of record," 32 V.S.A. §
 5252(4), and that this must mean that the lien holders have a sufficient
 interest to also give them the right to redeem. Since I am talking here
 about what a town might do, rather than what it must do, I offer no opinion
 on whether the Town's position is correct. At most, this position expands
 the list of those from whom the Town could seek consent.