STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Kaminsky - South Cove Road | } | |
| house replacement application | } | Docket No. 269-11-06 Vtec |
| (Appeal of Stuono and Suiter) | } | |
| | } | |

Decision and Order

William Stuono and Catherine Suiter appealed[1] from a decision of the Development Review Board (DRB) of the City of Burlington, approving Appellee-Applicants (Applicants) Gary Kaminsky and Krystyna Kaminsky's application to demolish an existing single-family house at 125 South Cove Road in the Waterfront Residential Low Density zoning district and replace it with a new, larger single-family house, garage, and swimming pool and associated site modifications. Appellants represent themselves; Interested Persons Martin Kuehne, Robert Fiorenza and Ann Fiorenza also appeared and represent themselves; Appellee-Applicants are represented by Carl H. Lisman, Esq.; and the City of Burlington is represented by Kimberlee J. Sturtevant, Esq.

After pretrial motions had been resolved, Question 4, Question 8 and a portion of Question 1 of the Statement of Questions remained for trial. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who took a site visit at the conclusion of the hearing, alone by agreement of the parties. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence as illustrated by the site visit, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

---

[1] Several other appellants and interested persons were dismissed from the appeal or withdrew.

Appellee-Applicants own a 22,106-square-foot[2] lot with the address of 125 South Cove Road, on the westerly leg of South Cove Road in the Waterfront Low Density zoning district and the Design Review overlay zoning district of the City of Burlington. An existing house is located on the lot.

Appellee-Applicants propose to replace the existing house with a larger house having a larger footprint, but meeting all of the dimensional criteria for a single-family residence in this zoning district. They do not request any waivers of or variances from the requirements of the Zoning Ordinance.

In this district the Zoning Ordinance requires a minimum lot size of 9,900 square feet; the subject lot is 22,106 square feet in area. The Zoning Ordinance allows a lot coverage of up to 35%; the lot coverage of the proposal is 34%. The Zoning Ordinance requires a fifteen-foot front setback, a ten-foot side setback, and a fifty-foot shoreline setback; the proposed house has a forty-foot front setback, has fourteen-to-fifteen-foot side setbacks, and has a shoreline setback of ninety feet. The Zoning Ordinance allows a height of thirty-five feet as calculated by a measurement method specified in § 5.3.19(b); by that method the height of the proposed house is 25' 4½".

Austin Drive is a "collector street" running in an east-west direction towards Lake Champlain, centered on a shallow peninsula of land extending into the Lake. Just to the

---

[2] The tax listing for the lot describes it as .71258 acre, although the square footage of the lot calculates as just over half an acre. As Appellee-Applicants have used the square footage in their calculations, which is consistent with the apparent size on the tax map of some neighboring half-acre lots, the square footage is used in this decision for the size comparisons. Appellants sought at trial to rely on the image of the lots as portrayed on satellite or aerial maps available on the internet. However, without a foundation as to the source of the underlying data for this area as portrayed on those maps, and, in particular, whether it has been orthographically corrected for the angle at which it was photographed, the Court cannot consider this as evidence of lot size, although it is useful to orient the Court to the configuration of the neighborhood.

south of the peninsula is a cove (presumably the "South Cove" of the nearby road name), with a beach maintained by the South Cove association, including the homeowners on South Cove Road, Dunder Road, Shore Road/Oakledge Drive, and Eastman Way.

At the westerly end of Austin Drive, a roadway shown on the tax map as Shore Road (but shown on the tax assessor's listings and on commercial maps as "Oakledge" or "Oakledge Drive") extends a short distance towards the west and then turns to the north, serving approximately seven large residences on relatively large lots. At the point at which Shore Road/Oakledge Drive turns to the north, a new roadway known as Eastman Way extends towards the south and west, serving a new development of houses on six or seven relatively small lots on the southern end of the peninsula. These lots are approximately half the size of the subject lot. The most southerly of these houses is an existing large older house which has been renovated (the Eastman House), adjacent to the South Cove beach, four of the Eastman Way houses are newly-built in the last few years and are very large in volume, especially in relation to their small lot sizes.

At the westerly end of Austin Drive, a loop road known as South Cove Road extends from Austin Drive towards the south to the South Cove beach, and then follows the shoreline farther to the south, serving part of a development apparently originally called the Redstone Park[3] Development. This westerly leg of the South Cove Road loop serves lots with frontage on Lake Champlain, as well as the lots across the street from those

---

[3] Although this area was also referred to at trial as the South Cove development, to avoid confusion by repeated uses of "South Cove," this decision will refer to the original development as the Redstone Park Development. Appellants and Interested Persons own homes within the Redstone Park Development, a subdivision of approximately seventy houses along the South Cove Road loop and Dunder Road created in the 1960s and early 1970s. Any issues relating to enforcement of the original covenants of this development are neither within the jurisdiction of the Environmental Court nor within the scope of this appeal.

lakeshore lots (including Appellant Stuono's lot). The most northerly of the lakeshore lots within the original Redstone Park Development is operated as a beachfront park by the South Cove Association. The southerly end of the South Cove Road loop road adjoins city park land. The easterly leg of the South Cove Road loop rejoins Austin Drive. The other road serving the Redstone Park Development is called Dunder Road; it runs north to south from Austin Drive, parallel to and farther to the east than the easterly leg of the South Cove Road loop, and is not generally visible from or accessible from the South Cove Road loop.

The houses in the original Redstone Park Development are an eclectic mix of styles, ranging from the contemporary (as that term was understood in the 1960s) to the colonial; the area was not a development of tract homes. Due to the age of the development, its landscaping has matured. The lots in the development vary in size; many are similar in size to the subject lot. Within the original Redstone Park Development, the lakeshore lots on the west side of the westerly leg of South Cove Road have lot valuations that are high in comparison to their house valuations, presumably due to their Lake views. Prior to the present application, one other such lakeshore lot has had an older house torn down and replaced with a much larger house, while at least one other has been remodeled and enlarged within its existing footprint. The houses on Eastman Way and the southerly end of Shore Road/Oakledge Drive, as well as the houses on the westerly leg of South Cove Road, have a visual relationship to subject property.

In addressing the issues raised by the remaining questions in Appellants' Statement of Questions, the Court is required to apply the substantive standards that were applicable before the DRB. V.R.E.C.P. 5(g); 10 V.S.A. § 8504(h).

<u>Question 8</u> - Whether the lower level of the proposed house should be "removed from the design plan" if "there is no intent to finish" it.

The amount of finished living space in a single-family house is not restricted in any way by the Zoning Ordinance applicable to this case. The lot and the proposed house meet all of the dimensional requirements of the Zoning Ordinance.

Appellants are free to seek changes in the Zoning Ordinance that would implement policies differing from those now contained in the ordinance, regulating house size, volume, finished living space, lot coverage, or any other parameter, either in general or specifically with respect to lakeshore properties. However, as applied to the present proposal, the Zoning Ordinance does not prohibit an unfinished lower level or regulate house size in terms of finished living space. Therefore, the Court has no basis to require the elimination of the proposed lower level simply because it is not now proposed to be finished, or because it might become finished living space in the future.

<u>Question 1:</u> Whether the "long term trend" of "teardowns and extremely large home development on the shores of Lake Champlain" will "negatively impact both the water quality of the Lake, and the scenic views from the Lake?"

Similarly, the Court does not have before it the larger policy question about whether the Zoning Ordinance should regulate teardowns or extremely large houses on the lakeshore, however those terms may be defined. The Court must apply the Zoning Ordinance, as it now exists, to the application at issue in the present appeal. Appellants are free to raise this policy issue in the ongoing ordinance amendment process and to seek such regulation, but it is not before the Court in this appeal unless it is reflected in the current Zoning Ordinance.

To the extent that the effect of this proposed house on the water quality of the Lake is even regulated by the Zoning Ordinance, it will not negatively affect the water quality

5

of the Lake.  First, with respect to the construction of permitted-use single-family homes in the Waterfront Low Density zoning district, which do not require conditional use review, site plan review, or major impact development review, only § 6.1.10(j) addresses the effect of the house construction on the water quality of the Lake.  It requires that the proposal "shall endeavor to minimize, insofar as practicable, any adverse impact on . . . water resources."  Because the house will be connected to the municipal sewer system and the municipal stormwater system, as required by other City ordinances, it will not discharge into the Lake and therefore the proposal will meet  § 6.1.10(j) with regard to the potential for affecting the water quality of the Lake.  If other state regulations also regulate construction on the site with respect to water quality,  no such regulations are before the Court in this appeal.

To the extent that the effect of this proposed house on views of the shoreline as seen from the Lake is regulated by the Zoning Ordinance, it will not negatively affect such views. The Zoning Ordinance does not regulate the view from the Lake of residential houses in this district, as contrasted with the additional criteria applicable in the Central Business and Waterfront Core zoning districts under § 6.1.11(b) and (c).  As seen from the Lake the existing house has the appearance of a wide two-story contemporary house with a hipped roof.  The proposed house has been designed with a low wall surrounding the sunken swimming pool on the Lake side of the house, which sufficiently masks the walk-out basement level of the house from the Lake, so that when seen from the Lake, the house will have the appearance of (will "read" as) a wide two-story contemporary house, with multiple hipped roof segments. In any event, even though it is not regulated by the Zoning Ordinance, the view from the Lake through the lot towards anything inland of the lot will not be changed by the proposal, as it is now substantially blocked by a combination of the existing house and the existing vegetation.  The proposal will result in that view's being blocked by somewhat more house and somewhat less vegetation.

6

<u>Question 4</u>: Whether the proposed project fails Design Review Criterion 6.1.10(a) "Relate Development to its Environment," and specifically whether the following six listed features of the proposed project are out of scale with the neighborhood development pattern: (a) the size of the house footprint; (b) the full 2-story (road side) and 3-story (lake side) house construction; (c) the overall square footage and volume of the house; (d) the lot coverage; (e) the size of the additional garage footprint; and (f) the height of the top of the roofline.

Section 6.1.10(a) is entitled "Relate development to its environment," and requires in full that:

> [t]he proposed development shall relate appropriately to its context. It shall relate harmoniously to the terrain and to the use, scale and architecture of existing buildings in the vicinity which have a functional or visual relationship to the proposed structure(s). Proposals that deviate from established neighborhood patterns should be discouraged.

Appellants ask the Court to limit the comparison to the houses in the original Redstone Park Development to determine the "established neighborhood pattern" for comparison with this proposal. Appellants argue eloquently for the preservation of the distinction between the character of the more modest original Redstone Park Development, and that of the more recent development of more imposing houses on smaller lakeshore lots as exemplified by the Eastman Way development. However, this is a policy distinction that is not reflected in the City's present Zoning Ordinance, which the Court is required to apply. At present, the Zoning Ordinance allows the smaller lots, greater lot coverage, smaller side setbacks, and shallower front yards that result in the more recent type of development. Moreover, even if we were to restrict the comparison to the original Redstone Park Development, at least two of the other houses on the west side of the westerly leg of South Cove Road have been replaced or substantially remodeled.

In any event while § 6.1.10(a) <u>requires</u> that the development relate appropriately to its context and harmoniously to the terrain and surrounding building scale and

7

architecture; it merely <u>discourages</u>, but does not prohibit, deviation from established neighborhood patterns.  This distinction in the language of the ordinance is presumed to be "inserted advisedly and not intended to create surplusage."  <u>In re Estate of Cote</u>, 2004 VT 17, ¶13, 176 Vt. 293, 296.

The Zoning Ordinance requires that the comparison be made to the scale and architecture of existing buildings which have a functional[4] or visual relationship to the proposal.  As described above, context of the proposal, and the neighborhood houses with a visual relationship to the proposal, include the Eastman Way houses and lots, as well as the houses in the original Redstone Park Development along both sides of the westerly leg of South Cove Road.  The southernmost houses along Shore Road/Oakledge Drive at the turn onto the westerly leg of the South Cove Road loop also provide an aspect of the neighborhood context.


<u>Size of house footprint</u>

The size of the house footprint is within the range of the larger houses along the lakeshore side of the westerly leg of South Cove Road, along Eastman Way, and the first two houses visible from the southerly end of Shore Road/Oakledge Drive.
<u>Number of stories as seen from the road and from the Lake</u>

As seen from the road, the proposed house has two visible stories plus the hipped roof, within the range of the houses along both sides of the westerly leg of South Cove Road, along Eastman Way, and the first two houses visible from the southerly end of Shore Road/Oakledge Drive.

As seen from the Lake, the number of stories will "read" as two, as the walk-out basement level will be masked by the swimming pool wall.  However, even if it were seen

---

[4] No functional relationship is claimed to exist among any of the residences.

as three stories, it is well within the range of the houses along the lakeshore on the westerly leg of South Cove Road, along Eastman Way, and the lakeshore houses on Shore Road/Oakledge Drive.

Square footage/volume of the house

The older houses in the South Cove Road development, including the existing house, are generally smaller in volume than the more-recently constructed houses in the area, and generally have smaller garages. Nevertheless, the square footage and volume of the proposed house is within the range of the houses along the westerly leg of South Cove Road, along Eastman Way, and the first two houses visible from the southerly end of Shore Road/Oakledge Drive. A visual comparison of the proposed house with the houses on Eastman Way and at 99 South Cove Road, 80 South Cove Road, 104 South Cove Road show that the bulk or volume of the proposed house is not out of scale with the larger nearby houses. Further, because of the contemporary design, the stone cladding of the ground floor, and the shallow profile of the hipped roofs for each segment of the proposed house and garage, the volume or bulk of the house will be broken up visually and will not appear out of scale with the neighboring lakeshore houses

Lot coverage

The lot coverage is within the range of the houses along both sides of the westerly leg of South Cove Road, and especially along Eastman Way.

Footprint of new garage

The older houses in the South Cove Road development, including the existing house, have smaller garages than do the more-recently constructed houses in the area. The proposed new garage is large, but its entrance is proposed to face the north rather than to face the street, so that it will not be as noticeable as garage space rather than as part of the house. In any event, the footprint of the new garage is within the range of the houses along the westerly leg of South Cove Road, along Eastman Way, and the first two houses visible

9

from the southerly end of Shore Road/Oakledge Drive.

<u>Height to ridge of roof</u>

The apparent height is well within the range of the houses along the lakeshore on the westerly leg of South Cove Road, along Eastman Way, and the houses visible at the southerly end of Shore/Oakledge Road. The height of the house relates more harmoniously to the terrain than some of those other houses, especially those on Eastman Way, as it is tucked into the slope of the shoreline and does not have the appearance of its full height when seen from the public road.

Considering all of the issues remaining from the Statement of Questions, as discussed above, the proposed house satisfies the provisions of the current Zoning Ordinance. Based on the foregoing, it is hereby ORDERED and ADJUDGED that the proposed project is approved with conditions as approved by the DRB, concluding this appeal.

Dated at Berlin, Vermont, this 29th day of November, 2007.

_____
Merideth Wright
Environmental Judge

10