Rasmussen v. Huntington, No. 230-11-09 Oecv (Devine, J., May 4, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
ORANGE COUNTY

| | | |
|---|---|---|
| Carol Rasmussen | ) | |
| and Richard Rasmussen | ) | Orange Superior Court |
| | ) | Docket No. 230-11-09 Oecv |
| v. | ) | |
| | ) | |
| Ron S. Huntington | ) | |
| and Randall S. Huntington, | ) | |
| Administrators for the Estate | ) | |
| of George E. Huntington | ) | |

Decision re: Motion for Summons to Trustee

Plaintiff Carol Rasmussen alleges in her complaint that she was injured by a car accident in June 2009 that was caused by the negligence of George Huntington, who has since passed away. Plaintiff and her husband accordingly filed the present lawsuit for damages against Mr. Huntington's estate.

It appears that plaintiffs' lawsuit is one of five personal-injury claims that have been made against the estate. Each of the personal-injury actions involves serious bodily injuries or even wrongful death, and it can be inferred at this point that the estate will not have sufficient funds to pay each of the claims in full. The estate is presently being administered in the probate court, and the probate court judge has directed the administrators not to distribute any estate assets without prior court approval.

In the present motion before this court, plaintiffs seek to attach property of the estate in the amount of two million dollars. Plaintiffs contend that the attachment is necessary to secure the payment of their claim in the event that the estate funds are depleted by the other pending personal-injury actions.

In evaluating plaintiffs' motion for trustee process, the court looks first to the applicable statutes and attempts to give effect to their plain meaning. *Carvalho v. Estate of Carvalho*, 2009 VT 60, ¶ 21; *In re Estate of Cote*, 2004 VT 17, ¶ 10, 176 Vt. 293. In doing this, the court must interpret the statutory scheme as a whole so as to give harmony and effect to each of the individual provisions. See *Estate of Cote*, 2004 VT 17, ¶ 11 (explaining that "statutes relating to the same subject matter should be construed together and read in pari materia, if at all possible") (quoting *Munson v. City of South Burlington*, 162 Vt. 506, 509 (1994)).

Here, the statutes make clear that the role of overseeing the distribution of estate assets is normally fulfilled by the probate court. It is the probate court, acting through the administrators, that is entrusted with responsibility for processing, classifying, and allowing the claims against the estate, and then distributing the estate assets according to

the statutory priorities. 14 V.S.A. §§ 1201–1207. In fulfilling these duties, one of the primary obligations of the administrators is to ensure that similarly-situated creditors are treated fairly and equally in the distribution of the estate. Title 14, V.S.A. § 1205(a) specifically provides that when the assets of the estate are insufficient to pay all of the claims that have been made against the estate, the administrator (subject to the approval of the probate court) must distribute the funds according to the following priorities: first come the costs of administration, then the reasonable burial-related expenses, then certain employee wages due, and only then all other unsecured claims. In the event that the assets are not sufficient to pay all of the claims within a particular class, the rule is that "[n]o preference shall be given in the payment of any claim over any other claim of the same class." 14 V.S.A. § 1205(b). Rather, payments to unsecured creditors must be "prorated if there are insufficient assets to satisfy all claims within the class." *Id*.

The statutes further clarify that unsecured creditors cannot circumvent the statutes by attaching property of the estate through other legal proceedings. Title 14, V.S.A. § 1212 provides that "[n]o execution may issue upon nor may any levy be made against any property of the estate under any judgment against a decedent or an executor or administrator, but this section shall not be construed to prevent the enforcement of mortgages, pledges or liens upon real or personal property in an appropriate proceeding." The import of this statute is that unsecured creditors cannot use the procedures of attachment, trustee summons, or execution to secure their debt once the decedent's property has come within the custody of the administrators. Instead, once the decedent's property is swept into the probate estate, it is distributed to unsecured creditors in accordance with the statutory priority scheme set forth in § 1205(b). It is only when the creditor already had a secured interest in the decedent's property prior to the decedent's passing (or at least prior to the creation of the probate estate) that the creditor is authorized to execute upon the secured interest through appropriate legal means. Compare 14 V.S.A. § 1212 (prohibiting the creation of new liens, but not the *enforcement* of existing liens) with *id*. § 1209 (providing for payment of secured claims during settlement of probate estates).

It follows from these statutes that an attachment in this case would interfere with the orderly administration of the probate estate. There is no need to preserve the assets of the estate from depletion because the administrators and the probate court have already taken possession of the property of the estate and are endeavoring to distribute that property in accordance with the statutory procedures. As such, the probate court is in the uniquely-qualified position of preserving the entire estate for the benefit of *all* the creditors, rather than simply the plaintiffs in this action. An attachment here would improve the priority of these plaintiffs to the detriment of other similarly-situated personal-injury plaintiffs. Such a result would neither be fair nor consistent with the statutes.

The court also notes the general rule that attachments should not be given where, as here, the property to be attached is already within the custody or oversight of the law. *Udall v. Mason*, 112 Vt. 416, 418–19 (1942); *Wilbur v. Flannery*, 60 Vt. 581, 583 (1888). Application of the rule makes sense here because the probate court has already assumed

2

jurisdiction over the property of the estate, and is actively ensuring that the assets will be distributed in accordance with law. As aptly explained by the Supreme Court of Wisconsin, "[t]he orderly and equitable administration of estates would be impossible and the statutes concerning the presentation and payment of claims against deceased persons would be set at naught if it were permissible for claimants to put the assets of the deceased beyond the control of executors and the probate court and to obtain preferences and priorities through the garnishment of such assets." *Mahrle v. Engle*, 53 N.W.2d 176, 179 (Wis. 1952); accord, e.g., *Sadler v. Wagner*, 475 P.2d 901, 903 (Wash. Ct. App. 1970); *Friedman v. Peizer*, 16 Conn. Supp. 174 (Conn. Super. 1949); 6 Am. Jur. 2d Attachment and Garnishment § 179.

Plaintiffs nevertheless contend that their motion for trustee summons is supported by various precedents. They argue first that 12 V.S.A. § 3015 expressly authorizes service of trustee summons upon the administrators of estates, and that examples of this can be found in *Island Pond National Bank v. Chase*, 101 Vt. 60 (1928) and *Lorenz v. King*, 38 Pa. 93 (1860). Yet both of these cases, as well as the statute, deal with the situation where the debtor is one of the beneficiaries rather than the decedent himself, and where the creditors are accordingly attempting to attach and garnish funds due *from the estate to the beneficiary*. In those circumstances, attachment is permitted because it lies only against whatever funds would otherwise be paid to the beneficiary, and thus does not interfere with or otherwise alter the distribution of the estate assets.

Plaintiffs also argue that the administrators are subject to trustee process under the general statute authorizing trustee summons, 12 V.S.A. § 3013, because the administrators are persons who hold "goods, effects or credits of the defendant." Yet the "long-standing rule of statutory construction" is that "where two statutes deal with the same subject matter, and one is general and the other specific, the more specific statute controls." *Smith v. Desautels*, 2008 VT 17, ¶ 17, 183 Vt. 255 (quoting *Town of Brattleboro v. Garfield*, 2006 VT 56, ¶ 10, 180 Vt. 90). Here, the court must give more weight to the specific statutory scheme regarding the administration of probate estates, 14 V.S.A. §§ 1201 et seq., and especially to the specific provision expressly prohibiting attachment of estate assets, 14 V.S.A. § 1212.

Plaintiffs further contend that attachment is necessary because otherwise the distribution of the estate will be left to the discretion of the probate court and the administrators. In response to this, it need only be observed that the probate court and the administrators will presumably follow the law in distributing the assets of the estate, and that there are other recourses available should plaintiffs feel aggrieved by the decisions of the probate court and the administrators. *Waite v. Osborne*, 11 Me. 185 (1834).

Finally, plaintiffs argue that attachments are permissible because the superior court has concurrent jurisdiction with the probate court regarding this claim. Yet the statutes are clear that it is the probate court that exercises jurisdiction over the settlement of estates. 4 V.S.A. § 311. The role of the superior court is merely to determine the merits of plaintiffs' cause of action, and not to exercise authority over the distribution of assets from the estate. See *Boyden v. Ward*, 38 Vt. 628, 633 (1866) (explaining that "the

3

jurisdiction of the probate court in the settlement of estates is so exclusive that even the courts of chancery do not interfere generally," and that to the extent that the county courts have any concurrent jurisdiction in the matter, it is "limited and seldom exercised").

It may be true that plaintiffs will not be able to recover the full amount of their claim in the probate proceeding. But there are already statutory procedures in place to ensure that, if the estate assets are not sufficient to pay all of the claims, plaintiffs will at least be treated equally with all the other creditors in the same class as plaintiffs. This, and not attachment, is the fairest outcome for all concerned.

For these reasons, plaintiffs' motion for trustee summons is denied.

Dated at Chelsea, Vermont this _____ day of May, 2010.

_____
Hon. Thomas J. Devine
Presiding Judge

4