STATE OF VERMONT
SUPERIOR COURT — ENVIRONMENTAL DIVISION

|  | } |  |
|---|---|---|
| **In re Moody Subdivision Permit** | } | Docket No. 45-4-13 Vtec |
|  | } |  |

## Decision on Motion for Summary Judgment

Morris L. Silver, Esq. and Torrin D. Silver ("Appellants") have appealed a decision by the Town of Benson Development Review Board ("DRB") issuing a permit to Alicia Moody ("Applicant") for a two lot subdivision located at 2049 Stage Road in Benson, Vermont ("the Town"). Appellants are adjoining property owners and have filed the motion for summary judgment now under consideration. Applicant responded to Appellants' summary judgment motion, which became ripe for the Court's consideration on August 6, 2013.

## Factual Background

For the sole purpose of putting the pending motion into context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

1. Applicant owns a 6.58 acre parcel located on Stage Road in Benson, Vermont ("the Parcel").

2. The Parcel is located in the Town's Agricultural and Rural Residential Zoning District ("ARR District").

3. The portion of the Parcel running along Stage Road is approximately 175 feet wide.

4. Pursuant to an application submitted on February 26, 2013, Applicant proposes a boundary line adjustment that would give an adjoining property owner a portion of the Parcel encompassing approximately 0.4 acres: a rectangular area measuring 65 feet wide at Stage Road and extending approximately 279 feet back from the road.

5. The application also proposes a division of the remainder of the Parcel into two pole and flag-shaped lots.

6. The first of these proposed lots ("Lot 1") encompasses approximately 2 acres, including a strip of land approximately 45 feet wide and 314 feet long leading from Stage Road to a wider area farther back from the road. This proposed Lot 1 would host Applicant's existing principal residence and garage, which will be located in the wider area of Lot 1.

7.     The second proposed lot ("Lot 2") encompasses approximately 4.15 acres, including a strip of land approximately 514 feet long leading from Stage Road to a wider area farther back from the road.  The portion of the strip adjacent to Stage Road is approximately 65 feet wide; after approximately 279 feet, the strip widens to 130 feet for the last 235 feet until it reaches the wider part of the lot.  Applicant proposes no principal structures for Lot 2.

**Discussion**

Currently before the Court is Appellants' motion for summary judgment.  We first note that we will grant summary judgment to a moving party upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2).  The parties have not raised any disputes of material fact regarding the pending motion.  Resolution of the pending motion hinges upon the legal interpretation of the relevant zoning regulations, and it is therefore appropriate for a summary judgment consideration.

Appellants, Applicant, and the Town dispute whether the proposed subdivision conforms to portions of the Town of Benson Zoning and Development Bylaws ("the Bylaws") concerning lot width as well as lot size and density requirements.  When interpreting municipal ordinances such as the one now before us, we apply the same principles of construction as we apply to the interpretation of legislative statutes.  In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262.  That is, we "construe words according to their plain and ordinary meaning."  Id. Because our paramount goal in interpreting an ordinance is to give effect to the intent of the relevant legislative body, we accept the plain meaning of the words unless doing so would make a provision ineffective or create irrational results.  Town of Killington v. State, 172 Vt. 182, 189 (2001).  We will only look beyond the language of the ordinance to help us ascertain the legislative intent if the language is ambiguous and, therefore, prevents us from identifying a plain and ordinary meaning.  See Id.  In such cases, "we must ascertain legislative intent through consideration of the entire statute, including its subject matter, effects and consequences, as well as the reason and spirit of the law."  In re Estate of Cote, 2004 VT 17, ¶ 10, 176 Vt. 293.  We may not construe an ordinance in a way that is at odds with its underlying purpose.  In re Jewell, 169 Vt. 604, 606 (1999) (mem.) (citing Mesa Leasing Ltd. v. City of Burlington, 169 Vt. 93, 95 (1999)).

2

## I. Lot width

The Bylaw states, "The minimum lot width shall be 200 feet." Bylaw § 3.3(3). Appellants argue that the proposed Lot 1, having a width of 45 feet where it fronts on Stage Road, and Lot 2, having a width of 65 feet where it fronts on Stage Road, each violate this provision. Applicant and the Town urge a different interpretation of "minimum lot width."

Ordinarily, the word "minimum" refers to the lowest number in a series of numbers. Thus, the ordinary meaning of "minimum lot width" would refer to the least wide, or narrowest, width of a proposed lot. Put another way, if the minimum lot width allowed is 200 feet, a proposed lot with a width of less than 200 feet at any given point would not conform to Bylaw § 3.3(3). Under this interpretation, the lots as proposed could not be allowed, because portions of them are less than 200 feet wide. Indeed, municipalities often use such language to discourage the creation of narrow "spaghetti" or "flag" lots.

The definitions section of the Bylaw, however, defines "lot width" as "the <u>average</u> distance across the lot measured parallel to the frontage side of the lot." Bylaw § 9 (emphasis added). The Bylaw provides that the words within the definition section shall have the meanings indicated therein "[u]nless otherwise specifically provided, or unless otherwise clearly required by the context." Bylaw § 9. Although Appellants argue convincingly that the phrase "minimum lot width" should have the meaning expressed in the preceding paragraph, we cannot—without specific language in the Bylaw or a clear indication from the provision's context—deviate from the definition provided in the Bylaw's definitions section.

Thus, applying this definition of "lot width," no lot can have an <u>average width</u> of less than 200 feet. Without a software program such as ArcGIS, calculating the average width of an irregularly-shaped polygon can be a difficult task, particularly if lines are not parallel to each other. For this reason, it is common for zoning regulations to explain the calculation to be used. Unfortunately, the Town's Bylaw provides no such explanation. Lot 1 can, as Appellants suggest, be broken into three rectangles, and the width of each can be weighted in proportion to its depth to reach an average width. The Town suggests calculating lot width by dividing the total area of the parcel by its total depth. Under both Appellants' and the Town's calculation method, the average lot width of Lot 1 is less than 200 feet when the calculation includes the narrow strip of land touching Stage Road. Applicant and the Town suggest that average lot width should be calculated without accounting for the narrow strips of the two proposed lots

intended as access roads, but we do not agree that the Bylaw implies that the lot width calculation should exclude any portion of a lot. We therefore conclude that a calculation of the "average lot width," as that term is used in Bylaw § 9, must include reference to the entirety of the proposed lot. As such, we conclude that the average lot width of Lot 1, calculated by reference to the entirety of the proposed lot, is less than 200 feet.

Applicant and the Town additionally claim that the proposed lots have no road frontage, and that the minimum lot width only applies to lots with road frontage. They also interpret the width requirement as only relevant to ensuring that the developable area of lots will meet setback requirements. We find these arguments unpersuasive. First, as a factual matter, the proposed lots <u>do</u> have frontage on Stage Road as defined by the Bylaw. Frontage is "[t]hat portion of a lot which is adjacent and parallel to a State highway, Town street, Town road[,] or Town right-of-way." Bylaw § 9. The proposed lots extend to and touch Stage Road; 45 feet of Lot 1 and 65 feet of Lot 2 are adjacent and parallel to it. Thus, the lots both have frontage on Stage Road. Second, nothing in the regulatory language of the width restriction supports Applicant and the Town's interpretation that the restriction is intended to assure adequate lot dimensions to avoid violating setbacks. In fact, that interpretation would appear to make the provision duplicative of the setback requirements themselves.

Thus, for the reasons articulated above, we conclude as a matter of law that the proposed subdivision does not conform to Bylaw § 3.3(3), since it is undisputed that the average lot width of Lot 1, calculated by including its narrow strip, is less than 200 feet.

## II. Lot size and density

Appellant, Applicant, and the Town also set forth proposed interpretations of the "minimum lot size" and "minimum density" provisions in Bylaws §§ 3.3(4) and 3.3(5) and the related subdivision provisions in Bylaws §§ 7.6 and 8.8(1). Read together, these provisions create substantial ambiguity about the lot size and density requirements, as well as their application to subdivisions and the new lots created by such subdivision. As we find that the proposed subdivision creates lost that are less than 200 feet wide and therefore do not conform to Bylaw § 3.3(3), however, we need not consider the arguments related to lot size and density.[1]

---

[1] While we need not address the lot size and density issues today, we recommend that the Town consider amending these Bylaw provisions in an effort to clarify these requirements and how they are applicable in the case of a proposed subdivision.

4

## Conclusion

For the reasons stated above, we **GRANT** Appellants' motion for summary judgment, as Applicant's proposal does not comply with Bylaw § 3.3(3). As a consequence of our entry of summary judgment for Appellants, we hereby **VACATE** the March 13, 2013 subdivision approval granted by the Town of Benson Development Review Board.

A Judgment Order accompanies this Decision. This concludes the proceedings before this Court.

Done at Berlin, Vermont this 10th day of September, 2013.

_____

Thomas S. Durkin, Environmental Judge