### State of Vermont v. John F. Cattanach

[271 A.2d 828]

No. 123-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 1, 1970

*Frank G. Mahady,* State's Attorney, and *Paul F. Hudson,* Deputy State's Attorney, for the State.

*Black & Plante,* White River Junction, for Defendant.

**Holden, C.J.** The defendant was adjudged guilty after unsuccessfully defending himself against a complaint for a motor

vehicle violation. He understood that a probable consequence of his conviction would be a suspension of his operator's license, but he didn't know when this might happen.

Suspension was ordered on December 26, 1967. On the same day, the commissioner of motor vehicles sent by certified mail a copy of his order suspending the defendant operator's license for a twenty day period effective December 29, 1967. The order called upon the defendant to deliver his license to the commissioner at Montpelier not later than December 29, 1967.

The order of suspension was received at the Bethel post office on December 27, 1967. A notice of the arrival of the certified letter was placed in the post office box which the defendant shared with his sister. The letter was not called for in the first few days after its arrival and a second notice was deposited in the defendant's box. This notice also went unanswered and on January 17, 1968, the postmaster returned the certified letter to the commissioner as "unclaimed."

In the interim, on December 30, 1967, the defendant was stopped by a Vermont state police officer while operating a Corvette on Main Street in Bethel. The present prosecution is for the offense for operating a motor vehicle on December 30, 1967, after his license had been suspended.

The defendant testified at the trial that the state police officer asked him at the time he was stopped on December 30, 1967, if he knew his license was suspended and he answered that he did not. The defendant and his sister also gave testimony that they visited their post office box each day on December 27 through December 30, 1967, and found no notice of the arrival of certified or registered mail. This was the sum and substance of the defense.

In submitting the case, the trial court instructed the jury that they should not be concerned with whether the defendant had actual notice of the suspension of his license. The district judge went on to charge that it was sufficient to sustain a verdict of guilty on this aspect of the case if the commissioner of motor vehicles had notified the defendant of the suspension of his license by written notice, by registered or certified mail directed to the defendant's last known address.

The defendant objected to this instruction. The jury found the defendant guilty. The defendant appeals from the convic-

tion. His assignment of error is confined to the court's charge on the subject of notice.

No question is raised concerning the commissioner's authority to revoke the defendant's license as a result of his earlier conviction for an offense against the motor vehicle law. And it is not questioned that the department of motor vehicles took the necessary administrative action to accomplish this result. The procedure is prescribed in 23 V.S.A. § 204:

> "A person whose license to operate a motor vehicle, or whose motor vehicle registration is suspended or revoked by the commissioner under the provisions of this title shall surrender forthwith his license or registration upon demand of the commissioner or his authorized inspector or agent. Such demand shall be made in person or by notice in writing sent by registered or certified mail to the last known address of such person, and such suspension or revocation shall be deemed to be in full force and effect upon the making of such demand, if made in person, or three days after the deposit of such notice in the United States mails, if made in writing.

23 V.S.A. § 674(a) provides:

> "A person whose license or whose right to operate a motor vehicle has been revoked, suspended or refused by the commissioner of motor vehicles shall not operate or attempt to operate a motor vehicle upon a public highway until the right of such person to operate motor vehicles has been reinstated by such commissioner by subsequent license or otherwise."

■ If the commissioner exercises the authority to suspend an operator's license within the limits of the motor vehicle law and correctly performs the procedural acts required to notify the licensee, the suspension becomes effective three days after his order and demand for surrender are certified or registered with the postal service. His inability to communicate this information, through no fault of the motor vehicle department, will not thwart a prosecution for the offense of driving under the suspension he has imposed. *State of Vermont* v. *Hebert,* 124 Vt. 377, 379, 205 A.2d 816 (1964).

We are mindful that in the *Hebert* case the State produced evidence that the accused knew that the commissioner's

notice was awaiting delivery and he admitted he knew of the subject of the mailing prior to the offense charged in the information. The defendant contends such knowledge is an essential ingredient of the offense proscribed by 23 V.S.A. § 674(a). If so, the requirement must be found outside the language of the statute, for the text of the enactment is silent on this point.

Unlike the wording of similar statutes in some other jurisdictions, § 674(a) makes no reference to knowledge, wilfulness or intentional wrongdoing. Compare, *In re Murdock,* 66 Cal. Rptr. 380, 437 P.2d 764, 766 (1968). The omission of words of such import is significant of the legislative intent. And the related provision in § 204, which makes the suspension effective three days after demand for surrender is deposited in the United States mails, without regard to delivery, lends strong support to a legislative purpose to eliminate the requirement of actual notice as an essential ingredient of the offense. Otherwise, the suspended operator might continue to operate indefinitely and avoid or postpone responsibility for such misconduct. See, *In re Murdock, supra,* 437 P.2d at 767 (dissenting opinion).

These considerations are persuasive that the omission of any reference to conscious wrongdoing in 23 V.S.A. § 674(a) was made with a legislative purpose. And the courts are not at liberty to supply a requirement which the lawmakers have deliberately omitted. *State of Vermont* v. *Fox,* 122 Vt. 251, 255, 169 A.2d 356 (1961).

It is within the power of the State to prohibit its licensees from doing an act irrespective of knowledge or ignorance on his part of the facts which make his conduct criminal. *State* v. *Gilmore,* 80 Vt. 514, 520, 68 A. 658 (1908). Such statutes are within the exercise of the police power for the protection of valid interests in the public safety. When so designed, the question of intention is immaterial. *State of Vermont* v. *LaBonte,* 120 Vt. 465, 467, 144 A.2d 792 (1958); *State* v. *Harvey,* 88 Vt. 358, 360, 92 A. 452 (1914); *State* v. *Cray,* 85 Vt. 104, 81 A. 450 (1911); See also *State* v. *Harris,* 101 N.H. 95, 133 A.2d 483, 484 (1957); 1 Wharton, Criminal Law and Procedure § 17 (Anderson Ed. 1957).

We recognize that the legislative power in this domain is not without some restriction. See, *Smith* v. *California,* 361 U.S. 147 (1959) ; *Lambert* v. *California,* 355 U.S. 225, 231 (1957). But the appropriate limitations are not presented in this appeal.

Lastly, the defendant contends that the interpretation of 23 V.S.A. § 674(a), claimed by the State, deprives him of his only defense and works a denial of due process within the requirements of our state and federal constitutions. The conviction of an offender who is ignorant of the facts which made his act criminal does not, for want of such knowledge, result in a denial of due process of the law. This principle was reaffirmed in Justice Frankfurter's opinion in review of a conviction for bigamy.

"In vindicating its public policy and particularly one so important as that bearing upon the integrity of family life, a State in punishing particular acts may provide that 'he who shall do them, shall do them at his peril and will not be heard to plead in defence good faith or ignorance.' " *Williams* v. *North Carolina,* 325 U.S. 226, 89 L.Ed. 65, 157 A.L.R. 1366, 1374 (1945); *United States* v. *Balint,* 258 U.S. 250, 252 (1922).

It is so in the case before us. The defendant's failure to receive delivery of the notice of suspension is not sufficient to bar his conviction for operating a motor vehicle after the revocation went into full force and effect.

*Judgment affirmed.*