### Robert Boutin v. William Conway

[572 A.2d 905]

No. 86-530

Present: **Allen, C.J., Gibson and Dooley, JJ., and Barney, C.J. (Ret.),**
**Specially Assigned**

Opinion Filed February 2, 1990

*Steve Dunham*, Public Defender, St. Albans, for Plaintiff-Appellant.

*Jeffrey L. Amestoy*, Attorney General, and *John K. Dunleavy*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Gibson, J.** Plaintiff appeals from a superior court decision affirming a determination of a Department of Motor Vehicles (DMV) hearing examiner that approved DMV's refusal to issue plaintiff a driver's license because of prior, unresolved license suspensions. We affirm.

### · I.

Plaintiff incurred multiple suspensions of his driver's license as a result of his failure to make timely payment of taxes. Plaintiff's license was suspended (1) in 1974 for failure to pay a penalty assessed for late payment of his poll tax, (2) in 1975 for failure to pay a late-payment penalty added to the purchase and use tax due on his vehicle, and (3) in 1976 for failure to pay the purchase and use tax due on a vehicle purchased by his girl friend and registered in plaintiff's name with his consent. The second suspension followed payment of the tax due, minus the late-payment penalty, with a check stating "tax paid in full." The third suspension followed failed attempts to notify plaintiff of the tax due; notice was sent by mail to the address listed on the registration form, but not to other addresses where DMV had previously been able to reach plaintiff.

In 1976, plaintiff was convicted of driving while his license was suspended (DLS). As a result of that conviction, plaintiff's privilege to operate a vehicle was made contingent upon his furnishing DMV with proof of financial responsibility. The DLS conviction was set aside in 1986, however, and proof of financial responsibility is no longer a prerequisite to plaintiff's obtaining a license or a live issue in this case.

In 1978, plaintiff's first suspension was lifted following enactment of a law repealing the poll tax and requiring reinstatement of licenses that had been suspended for failure to pay the poll tax. See 1978, No. 118 (Adj. Sess.), §§ 1, 16. Because the

other suspensions remained, however, plaintiff's 1984 reapplication for a license was denied, as were his subsequent appeals to DMV and the Franklin Superior Court.

In affirming the hearing examiner's decision, the trial court concluded that (1) the second suspension was valid because the late-payment penalty is part of the purchase and use tax, and the general rules of accord and satisfaction do not apply to tax cases; (2) the third suspension was valid because plaintiff received constructive notice of the suspension and the evidence did not support plaintiff's contention that the tax had been paid; (3) the suspension of plaintiff's license due to his failure to pay purchase and use taxes did not violate any constitutional provisions; and (4) the refusal to issue plaintiff a driver's license while he was under suspension was proper.

## II.

Plaintiff first argues that the 1975 suspension was unlawful because (1) once plaintiff paid the purchase and use tax, the Commissioner of Motor Vehicles had no authority to suspend his driver's license for failure to pay a late-payment penalty; (2) plaintiff reached an accord and satisfaction with DMV when he paid the tax due, minus the late-payment penalty, with a check marked "paid in full" that was cashed by DMV; (3) DMV did not give plaintiff a hearing prior to the suspension; and (4) the 1975 suspension is barred by the statute of limitations.

32 V.S.A. § 8903 imposes a four percent tax on the purchase and use of motor vehicles within the state, payable under § 8905 to the Commissioner of Motor Vehicles. Further, in an incomplete sentence,* § 8905(c) provides "[i]f the tax due under subsections (a) and (b) . . . is not paid as provided, a penalty of an additional one per cent of taxable cost or $150.00 whichever is smaller." Thus, § 8905(c) requires that a penalty fee be added if payment is late and, in those cases involving late fees, effectively increases the tax due under § 8903(a) and (b) by adding the penalty fee. If the purchase and use tax is not paid, 32

---

* According to the editor's note following § 8905, the "[w]ords 'shall be due' which originally appeared in subsec. (c) were probably omitted inadvertently from reenactment of [the] subsection by 1969, No. 276 (Adj. Sess.), § 9."

V.S.A. § 8909 provides that "the commissioner shall suspend [the vehicle owner's] right to operate a motor vehicle within the state of Vermont until such tax is paid."

■■  When the meaning of a statute is in doubt, we determine its intent from "'a consideration of the whole and every part of the statute, the subject matter, the effects and consequences, and the reason and spirit of the law.'" *Langrock v. Department of Taxes*, 139 Vt. 108, 110, 423 A.2d 838, 839 (1980) (quoting *Holbrook Grocery Co. v. Commissioner of Taxes*, 115 Vt. 275, 278–79, 57 A.2d 118, 120 (1948)). From an examination of the various interrelated sections of the motor vehicle purchase-and-use tax statute, we conclude that the late-payment penalty is part of the tax itself for purposes of enforcement. We arrive at this conclusion based not only on the language of the sections of the statute, but also on the fact that a contrary interpretation would lead to the irrational result that the commissioner would be unable to collect the penalty. *In re Southview Assocs.*, 153 Vt. 171, 175, 569 A.2d 501, 503 (1989) (we avoid construction of statutory language that would render legislation "ineffective or irrational").

■  In regard to plaintiff's accord-and-satisfaction argument, we held in *In re Estate of Boynton*, 121 Vt. 98, 109–10, 148 A.2d 115, 122 (1959), where a taxpayer tendered a check "in full settlement of the transfer tax liability for the jointly owned property," that

> [t]he transfer tax in question is purely statutory. The general rules applicable to accord and satisfaction do not apply here. The acceptance of the check by the Commissioner of Taxes operated merely as a payment *pro tanto*, and not as full satisfaction of the transfer tax . . . . [T]o hold otherwise would hamstring the State in the administration of its business affairs . . . , including the collection of . . . taxes.

Contrary to plaintiff's assertion, *Clace v. Fair*, 129 Vt. 573, 574, 285 A.2d 705, 705–06 (1971), did not overrule *Boynton*. *Clace* held that there could be no subsequent judgment for penalties and interest resulting from late payment of real estate taxes because, among other things, "[w]hen the principal amount was

paid, no claim was made for penalties and interest." *Id.* Here, prior to the time plaintiff wrote the check, DMV informed him that the mandatory statutory penalty would be added to the tax. Further, upon receiving plaintiff's check, DMV promptly demanded payment of the statutory penalty for late payment, which, as noted above, had effectively become part of the purchase and use tax. Consequently, plaintiff's accord-and-satisfaction defense affords him no relief.

With respect to plaintiff's claim of a right to a hearing prior to suspension of his driver's license, we note that the United States Supreme Court has held that the Fourteenth Amendment's Due Process Clause applies to a state's deprivation of a driver's license, but does not require an evidentiary hearing prior to the suspension of the license in all instances. See *Mackey v. Montrym*, 443 U.S. 1, 11–19 (1979); *Dixon v. Love*, 431 U.S. 105, 112–14 (1977). Although those decisions construed state statutes which revoked licenses following traffic offenses, we conclude that the test first explicated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), and relied on in *Mackey* and *Dixon*, does not require a prior hearing in the instant case, where the state statute calls for the suspension of a driver's license after notice of failure to pay the tax due on a vehicle. The private interest at stake is not so great as to require a prior hearing, *Dixon*, 431 U.S. at 113; the risk of erroneous deprivation is not great because notice is given and the suspension is automatic, *id.* ("Of course, there is the possibility of clerical error, but written objection will bring a matter of that kind to the [administrator's] attention."); and the substantial public interest in collection of taxes and administrative efficiency would be impeded by mandatory prior hearings. See *id.* at 114. Moreover, as here, where a license is suspended automatically upon failure to meet a readily determinable requirement—payment of a tax—and the suspension is only effective until the readily determinable requirement is met, there is less need for a prior evidentiary hearing to assure due process of law. See *Kreutzer v. County of San Diego*, 153 Cal. App. 3d 62, 71–73, 200 Cal. Rptr. 322, 328–29 (1984).

■ Finally, regarding plaintiff's statute-of-limitations argument, we agree with DMV that plaintiff is not entitled to amnesty from the continuing suspension of his driver's license merely because DMV has declined to go to court to seek payment of the unpaid tax that brought about the sanction. Once plaintiff's license was suspended, DMV had no reason or duty to continue its attempts to collect the unpaid tax within a specified period of time.

## III.

■ Plaintiff contends that his 1976 suspension was unlawful because he was not given proper notice of the suspension and his payment of four cents on his own assessed value of $1.00 for the car constituted payment of the purchase and use tax. Regarding his claim of payment, the purchase and use tax is assessed on actual value; the commissioner need not accept a nominal value asserted by a car owner. See 32 V.S.A. § 8907. In the instant case, the commissioner assessed a $3.96 tax on the car.

■ With respect to his claim of lack of notice, DMV's reliance on the address listed by plaintiff's girl friend (when she filled out the registration application with plaintiff's consent) was proper, regardless of whether plaintiff actually received notice. See 23 V.S.A. § 204 (demand for surrender of license shall be sent to last known address); *State v. Cattanach*, 129 Vt. 57, 59–60, 271 A.2d 828, 829 (1970) (defendant's alleged failure to receive delivery of notice of suspension of driver's license was not sufficient to bar conviction for operating a motor vehicle after suspension of license). Plaintiff had a continuing duty to inform DMV of any change of address. See 23 V.S.A. § 205.

■ Regarding plaintiff's constitutional arguments, although the right to travel is a fundamental, constitutional right, there is no absolute right to drive a car on the highways of Vermont. See *Leverson v. Conway*, 144 Vt. 523, 530–31, 481 A.2d 1029, 1033–34 (1984), *rev'd on other grounds*, 472 U.S. 1014 (1985). In order to assure that there are safe drivers and safe roads, all potential drivers must pass a test and pay the requisite fees. Accordingly, the suspension of one's driver's license

for failure to pay an automobile purchase and use tax assessment is not extortion, as plaintiff claims, but a rational method for the collection of taxes in the public interest. See *Wells v. Malloy*, 402 F. Supp. 856, 859–60 (D. Vt. 1975), *aff'd without opinion*, 538 F.2d 317 (2d Cir. 1976). If plaintiff chooses not to pay taxes owed, he is still free to travel and use the public ways.

■ Finally, plaintiff claims that requiring him to pay a reinstatement fee in the event his suspensions are lifted violates the ex post facto provision of the United States Constitution because all of his suspensions were initiated before the reinstatement fee was enacted in 1980. The pertinent legislation, however, did not include a "grandfather clause" exempting existing suspensions. Cf. *Zaragoza v. Director of Dep't of Revenue*, 702 P.2d 274, 276 (Colo. 1985) (application of statute is not rendered retroactive and unlawful merely because facts upon which it operates occurred before adoption of statute). Further, plaintiff had no case pending at the time the law was enacted. Therefore, plaintiff's suspensions constituted a continuing violation of the law and subjected him to the reinstatement-fee requirements.

*Affirmed.*