STATE OF VERMONT

SUPERIOR COURT                     ENVIRONMENTAL DIVISION
                                   Docket No. 3-1-19 Vtec
                                   Docket No. 4-1-19 Vtec

| | |
|---|---|
| Capitol Plaza 2-Lot Subdivision<br><br>Capitol Plaza Major Site Plan | DECISION ON MOTIONS |

These coordinated appeals relate to a parking garage and associated subdivision (the Project) proposed by the City of Montpelier (the City). The City applied for subdivision and Major Site Plan approval in connection with the Project, and the Montpelier Development Review Board (DRB) approved both applications. John Russell and Les Blomberg (together, Appellants) appeal the DRB's decisions. The appeals were filed on the same date: January 8, 2019. The subdivision appeal was assigned Docket No. 3-1-19 Vtec, while the site plan appeal was assigned Docket No. 4-1-19 Vtec.

In this matter, Appellants are represented by James A. Dumont, Esq. The City is represented by David W. Rugh, Esq. and Joseph S. McLean, Esq. Interested party Capitol Plaza Corporation is represented by Jeffrey O. Polubinski, Esq. Currently before the Court are the parties' motions and cross-motions for summary judgment.

**Standard of Review**

We will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable through V.R.E.C.P. 5(a)(2). We accept as true all of the nonmovant's allegations of fact, as long as they are supported by affidavits or other evidence. White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted). In considering cross-motions for summary judgment, the Court considers each motion individually and gives the opposing

party the benefit of all reasonable doubts and inferences. <u>City of Burlington v. Fairpoint Commc'ns, Inc.</u>, 2009 VT 59, ¶ 5, 186 Vt. 332.

## Factual Background

We recite the following facts, which we understand to be undisputed, based on the record now before us and for the sole purpose of deciding the pending motions. The following are not specific factual findings with relevance outside of this summary judgment decision. See <u>Blake v. Nationwide Ins. Co.</u>, 2006 VT 48, ¶ 21, 180 Vt. 14 (citing <u>Fritzeen v. Trudell Consulting Eng'rs, Inc.</u>, 170 Vt. 632, 633 (2000) (mem.)).

1. The Project must comply with Montpelier's development regulations, entitled "Unified Development Regulations" (UDR), last amended January 3, 2018.

2. On or about September 24, 2018, the City and Capitol Plaza Corporation (Capitol Plaza) filed an application seeking permission to subdivide an existing 2.75-acre lot owned by Capitol Plaza and located at "100 State Street." The subdivision would create a new lot approximately 0.55 acres in size (the new lot) which the City would acquire from Capitol Plaza.

3. On the same date, the City and Capitol Plaza filed an application seeking major site plan approval to construct a proposed 348-space municipal parking garage.

4. The proposed location for the parking garage includes part of the new lot to be created by subdivision, and part of a lot that the City leases from the Lawrence P. Heney Family Trust and the Mary M. Heney Family Trust (the Heney Lot).

5. The land at the proposed Project site is currently used as surface parking for the Capitol Plaza Hotel and public parking for the City.

6. The Heney Lot is a pre-existing parking lot which does not currently conform to all regulations under the UDR.

7. The 2.75-acre lot at 100 State Street, which the City wishes to subdivide, does not currently contain private streets. There are two existing driveways running through the property.

8. A proposed subdivision plat, submitted by the City and by Appellants (Plan BA-1), shows street easements for a new private street to be known as "Plaza Park Drive." Plaza Park Drive will provide access to the parking garage at the northwest corner of the new lot.

9. Plan BA-1 shows a segment of Plaza Park Drive running north from the new lot to connect with State Street (the north-south segment). The other segment of Plaza Park Drive intersects the north-south segment and runs west to connect with Taylor Street (the east-west segment).

10. The easements shown for Plaza Park Drive are 24 feet wide, with the exception of the entrance to the parking garage which is wider.

11. Plan BA-1 shows a sidewalk easement along the north-south segment of Plaza Park Drive. The sidewalk will be separated from the street by parking spaces. The sidewalk easement is 7 feet wide and located on the west side of the street. There is no easement shown on the other side of the street.

12. According to a Letter of Intent between Capitol Plaza and the City, the City will operate Plaza Park Drive and will be responsible for maintenance and repair.

13. According to the Letter of Intent, Capitol Plaza will enter into a thirty-year agreement with the City to use up to 200 parking spaces in the parking garage.

14. The parking garage will be owned and operated by the City.

15. The parking garage will be located in the Urban Center-1 zoning district (UC-1 District).

16. The parking garage is a permitted use in the UC-1 District.

## Discussion

The City's motion for summary judgment asserts that several issues raised in Appellants' Amended Statement of Questions in each docket are outside the scope of our review. We note at the outset that Appellants have withdrawn Questions 2 and 6 from their subdivision appeal, along with Questions 1 and 3 from their site plan appeal. Appellants argue against further narrowing the scope of review, and they have filed two motions: a cross-motion for summary judgment on the Project's compliance with subdivision and site plan regulations, and a motion for summary judgment on the requirement for sidewalks along new streets.

At a status conference on December 19, 2019, the Court informed the parties of its conclusion as to the scope of review and directed Appellants to file an Amended Statement of Questions in both dockets (Nos. 3-1-19 and 4-1-19 Vtec) to clarify their questions. Appellants filed amendments in both dockets. The Court issued a decision on February 4, 2020, addressing the City's objections and interpreting Appellants' amended questions to set forth the specific regulations at issue. Capital Plaza 2-Lot Subdivision/Capitol Plaza Major Site Plan, Nos. 3-1-19 Vtec & 4-1-19 Vtec (Vt. Super. Ct. Envtl. Div. Feb. 4, 2020) (Walsh, J.). We now turn to the pending motions for summary judgment, explaining our conclusion on the scope of review and addressing the motions as they relate to Appellants' amended questions.

I.      City's Motion for Summary Judgement on the Scope of Review

The City's motion focuses on the threshold question of what law governs the scope of our review. This Court's authority in municipal appeals "is as broad as the powers of the [DRB], but . . . not broader," and thus the scope of our review is confined to the regulatory authority of the DRB below. See In re Torres, 154 Vt. 233, 235 (1990). The parties fundamentally disagree as to the bounds of that authority. Their dispute centers on the applicability and reach of UDR § 3103, which places limits on development review for certain projects. The City contends that § 3103 applies, while Appellants argue that the state enabling statute, 24 V.S.A. § 4413(a), supersedes.

UDR § 3103 states, in relevant part:

Land development associated with a community facility . . . may only be regulated with respect to location, size, height, building bulk, yards, courts, setbacks, density of buildings, off street parking, loading facilities, noise, lighting, landscaping, and screening requirements, and only to the extent that the regulations do not have the effect of interfering with the intended functional use.

Community facilities include:
(1) Institutions and facilities owned and operated by the city or state.

UDR §§ 3103.A, B.

This provision is modeled after the state enabling statute, titled "Limitations on municipal bylaws." 24 V.S.A. § 4413. The statute provides the following regarding "state- or community-owned and operated institutions and facilities":

[These] uses may be regulated only with respect to location, size, height, building bulk, yards, courts, setbacks, density of buildings, off-street parking, loading facilities, traffic, noise, lighting, landscaping, and screening requirements, and only to the extent that regulations do not have the effect of interfering with the intended functional use. . . .

24 V.S.A. §§ 4413(a)(1), (a)(1)(A).

a. *The Proposed Parking Garage is a "Community Facility" Under § 3103 and § 4413*

The two provisions before us, § 3103 and § 4413(a), contain small but important differences. The first question, however, is common to both: whether the Project is a "community facility" entitled to some degree of limited regulation. See UDR § 3103.A; 24 V.S.A. § 4413(a)(1)(A). We find that it is. Both § 3103 and § 4413 apply to facilities "[]owned and operated" by a municipality. 24 V.S.A. §4413(a)(1)(A); see UDR § 3103.B. We have held that the term "community" in § 4413(a) includes municipalities, and that a town-owned trail system on town land can be a "community-owned and operated facilit[y]" under the statute. In re Town of Charlotte Recreational Trail, No. 98-5-08 Vtec, slip op. at 5–6 (Vt. Super Ct. Envtl. Div. Feb. 14, 2011) (Durkin, J.).

As relevant here, § 3103 defines "community facilities" as "facilities owned and operated by the city." UDR § 3103.B. Appellants do not dispute that the City will own and operate the proposed parking garage, nor do they argue that it is not a "facility."[1] Rather, Appellants' contention that § 4413(a) controls our review suggests that they believe the Project is a "community facility" as that term is used in the enabling statute. On the facts before us, the Project plainly falls within the purview of both § 3103 and § 4413.[2]

---

[1] Appellants have challenged the constitutionality of applying § 3103 in a manner that limits subdivision review for the Project. We address their argument later in this decision, as it relates to the reach or force of § 3103 rather than the question whether the Project is a "community facility" as that term is currently defined.

[2] Some of Appellants' filings suggest that aspects of the Project are not "owned and operated" by the City and therefore are not part of the "community facility" entitled to limited review. See 24 V.S.A. 4413(a); UDR § 3103. To the extent that Appellants intended to raise that argument, we address it here. Assuming that certain aspects of the proposed subdivision (for example, new streets) will not be owned by the City, we recognize that those aspects may not fit the definition of a "community facility." It is clear, however, that the proposed parking garage itself does fit the definition. If UDR § 3103 governs in this case, it limits review for "development *associated with* a community facility." Thus, the limited review described in § 3103 reaches all aspects of the Project. See UDR § 3103.A (emphasis added).

b. *Whether UDR § 3103 Governs the Scope of Review*

The heart of the dispute between the parties is which provision governs our review of the Project. The City asserts that the municipal provision, § 3103, applies and limits regulation of all "development" associated with the Project including subdivision review. Appellants argue that § 4413(a) controls and does not limit subdivision review. The parties appear to agree that § 3103, if it applies, does place limits on subdivision regulation. Before turning to the larger question of applicability, we briefly outline our reasons for finding the same.

The enabling statute, § 4413(a), limits municipal regulation of state or community facilities as one of several specified "uses"; we have construed this as a limitation on land use regulation including zoning, conditional use, and site plan approval. 24 V.S.A. § 4413(a); see, e.g., In re Town of Charlotte Recreational Trail, No. 98-5-08 Vtec, slip op. at 3 (Vt. Super Ct. Envtl. Div. Feb. 14, 2011) (Durkin, J.) (applying § 4413(a) to conditional use and site plan review, and stating: "Section 4413(a) identifies the land uses that are entitled to limited regulation"); In re Goddard Coll. Conditional Use, No. 175-12-11 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Sep. 19, 2018) (Walsh, J.) (applying § 4413(a) to conditional use review of a school heating system because "the legislature identified certain *uses*, such as schools," which are entitled to limited regulation) (emphasis in original). By contrast, UDR § 3103 limits regulation of "[l]and development associated with a community facility." While subdivision review may not regulate land use in the narrow sense, as it "is not intended to police prospective uses," it does fall under the broader category of "land development" regulation as defined by state statute and Montpelier's bylaws. See In re Taft Corners Assocs., Inc., 171 Vt. 135, 141, 138 (2000) (noting overlap and differences between land use and subdivision); 24 V.S.A. § 4303(10) (land development includes "the division of a parcel into two or more parcels"); UDR § 5101.L(2)(f) (land development includes "the division of a lot into two or more lots"). Thus, if § 3103 governs, the limitation on regulation includes limits on subdivision review.

On the question of applicability, Appellants contend that § 4413(a) supersedes because the statute itself "states that it controls over any less restrictive by-law." Because § 3103 restricts regulation for community facilities more comprehensively than § 4413(a), Appellants argue it is less restrictive on development and therefore must yield to the state statute. To answer whether

the statute or the bylaw applies, we turn to the principles of statutory interpretation.  Our goal is "to effectuate the intent of the Legislature."  Tarrant v. Dep't of Taxes, 169 Vt. 189, 197 (1999).  To discern legislative intent, "[w]e first look to the language and give effect to the plain meaning of the statutory language used."  Khamnei v. Burlington Pub. Works Comm'n, 2018 VT 19, ¶ 8, 206 Vt. 550.  When the language is ambiguous, "we determine its intent from a consideration of the whole and every part of the statute, the subject matter, the effects and consequences, and the reason and spirit of the law."  Ran-Mar, Inc. v. Town of Berlin, 2006 VT 117, ¶ 5, 181 Vt. 26 (quoting Boutin v. Conway, 153 Vt. 558, 562 (1990)) (internal quotations omitted).  "We construe all parts of the statutory scheme together, where possible, as a harmonious whole."  Id. (citing In re Estate of Cote, 2004 VT 17, ¶ 10, 176 Vt. 293.)

We begin with the language that, in Appellants' view, establishes § 4413(a)'s supremacy. 24 V.S.A. § 4413(c) states:

> Except as otherwise provided by this section and by 10 V.S.A. § 1976, if any bylaw is enacted with respect to any land development that is subject to regulation under State statutes, the more stringent or restrictive regulation applicable shall apply.

This provision is unambiguous.  Where a bylaw regulates land development "that is subject to *regulation* under State statutes, the more . . . restrictive *regulation* applicable shall apply."  Id. (emphasis added). The plain meaning is that, where a municipal bylaw and a state statute both regulate land development, the more restrictive provision governs. See id.  In other words, § 4413(c) prevents municipal bylaws from undercutting state requirements.

It is also clear that § 4413(c) is inapplicable to § 4413(a).  The requirements of § 4413(c) apply "except as otherwise provided by this section." 24 V.S.A. § 4413(c).  The plain meaning appears to exempt the other subsections of § 4413.  In addition, § 4413(a) does not regulate "land development." See id.  It functions as an enabling statute and a "[l]imitation[] on municipal bylaws." See 24 V.S.A. § 4413.  As relevant here, the statute limits how towns "may" regulate community facilities; it does not include any requirements for community facilities and does not require towns to regulate them.  See 24 V.S.A. § 4413(a); Weitz v. Weitz, 2019 VT 35, ¶ 8 (noting that "use of the permissive term 'may' shows that [the action] is . . . option[al]").  We do not ask whether a project complies with § 4413(a), but whether it complies with the relevant municipal

7

regulations as limited by § 4413(a).  See <u>Town of Charlotte Recreational Trail</u>, No. 98-5-08 Vtec at 3 (Feb. 14, 2011).

Appellants appear to argue that § 4413(a) sets a floor for regulation, but in fact it sets a ceiling.  In adopting UDR § 3103, Montpelier chose to stay well below the relevant limits. While § 4413(a) restricts municipalities' authority to review certain land uses, § 3103 recognizes those limitations and applies them to development review more generally. Compare 24 V.S.A. § 4413(a) and UDR § 3103.A.  And, while § 4413(a) permits municipalities to regulate traffic, § 3103 omits traffic from the areas of permissible regulation. Compare 24 V.S.A. § 4413(a) and UDR § 3103.A. Because § 3103 does not exceed the limits set forth in the statute, § 3103 controls the scope of review.

Even if the meaning or application of § 4413(c) was ambiguous, a look at "all parts of the statutory scheme" leads to the same conclusion: that § 4413(a) was not intended to supersede municipal bylaws requiring *less* regulation of community facilities.  See <u>Ran-Mar, Inc. v. Town of Berlin</u>, 2006 VT 117, ¶ 5 (discussing statutory construction).  Section 4413 is part of Title 24, Chapter 117, Subchapter 7, governing "[b]ylaws."  Within Subchapter 7, municipalities are granted the authority to implement regulatory tools including zoning, site plan, and subdivision regulations. See 24 V.S.A. §§ 4410 (general authority), 4411 (zoning), 4416 (site plan), 4418 (subdivision).  The grant of authority in each case is permissive; municipalities are not required to regulate development through zoning, site plan, or subdivision bylaws. See, e.g., 24 V.S.A. § 4410 (municipalities "may regulate land development"); 24 V.S.A. § 4418 (municipalities "may regulate [subdivision]").  In a statutory scheme where the decision to regulate is generally left to local discretion, we cannot imagine that the Legislature intended a provision expressly limiting regulation to have the effect of requiring it. See 24 V.S.A. § 4413(a); <u>In re Southview Assocs.</u>, 153 Vt. 171, 175 (1989) ("We will avoid a construction that would render the legislation ineffective or irrational.").

Appellants' argument to the contrary is premised on the assertion that nothing in § 4413(a) "authorizes" a municipality to exempt community facilities from subdivision review. Beyond the language of § 4413(c), Appellants rely on Dillon's Rule for the proposition that Montpelier's bylaw cannot go further than the enabling act by creating a broader exemption.

See City of Montpelier v. Barnett, 2012 VT 32, ¶ 20, 191 Vt. 441 (stating that "Dillon's Rule . . . requir[es] that grants of power to municipalities be read as limited to those clearly enumerated"). Yet Appellants' position would invert the operation of Dillon's Rule. As established above, § 4413(a) does not "authorize" exemptions from an otherwise mandatory scheme, it places limits on an otherwise permissive scheme which does not require municipalities to regulate. See 24 V.S.A. § 4413(a); 24 V.S.A. § 4410 ("A municipality . . . may . . . regulate land development in any manner [consistent with the town plan and Title 24].").  Thus, the only way to extend beyond the enabling act is to call for *more* regulation than the statute allows.  Montpelier, through UDR § 3103, has chosen to limit subdivision review for community facilities. See UDR § 3103.A (limiting regulation of "land development").  The fact that § 3103 provides for less regulation than § 4413(a) does not exceed a grant of power.  The state statute does not supersede, therefore § 3103 governs.

Because we find that § 3103 applies in this case and limits subdivision review, we must address Appellants' constitutional argument.  Appellants point to the Common Benefits Clause in Article 7 of the Vermont Constitution, asking the Court to exclude the Project from the definition of "community facility" or declare that applying § 3103 to limit subdivision review in this case would be unconstitutional.  To the extent we can decipher Appellants' argument, we find it unsupported.

Under the Vermont Constitution, the Common Benefits Clause "is intended to ensure that the benefits and protections conferred by the state are for the common benefit of the community and are not for the advantage of persons 'who are a part only of that community.'" Baker v. State, 170 Vt. 194, 212 (1999) (quoting Vt. Const. ch. I, art. 7).  "The rights guaranteed . . . are generally coextensive with those protected under the Equal Protection Clause of the United States Constitution." L'Esperance v. Town of Charlotte, 167 Vt. 162, 165 (1997) (citing Brigham v. State, 166 Vt. 246, 265 (1997).  Where fundamental rights or suspect classes are not implicated, government action is reviewed under "the rational basis test, whereby distinctions will be found unconstitutional only if similar persons are treated differently on wholly arbitrary and capricious grounds." See Brigham, 166 Vt. 246 at 265 (quotations omitted).  The burden is on the challenger to show that the distinction is not rationally related to a legitimate government interest.  See

Smith v. Town of St. Johnsbury, 150 Vt. 351, 357 (1988); see also McLaughry v. Town of Norwich, 140 Vt. 49, 54 (1981) (holding that zoning bylaws are presumed valid and the movant has the burden of proving otherwise).

Appellants assert that 24 V.S.A. § 4413(a) and UDR § 3103 do not define "community facility" and urge us to exclude the Project from the definition. As we have already noted, § 3103 does define "community facilities" to include "[i]nstitutions and facilities owned and operated by the city." UDR § 3103.B. The definition comports with our cases interpreting § 4413(a). See Town of Charlotte Recreational Trail, No. 98-5-08 Vtec at 5–6 (Feb. 14, 2011) (concluding that "municipal-owned and operated" facilities are entitled to limited review). The undisputed facts show that the City will own and operate the parking garage, and Appellants have not argued that the garage is not a "facility." See UDR §§ 3103.A, B; 24 V.S.A. § 4413(a). On the facts currently before the Court, the parking garage fits the definition set forth in § 3103. We decline to read additional qualifications into an otherwise clear provision.

Appellants do not contend that the Montpelier's legislative body adopted § 3103 for discriminatory reasons or to "benefit a particular part of the community." See USGen New England, Inc. v. Town of Rockingham, 2003 VT 102, ¶ 30, 176 Vt. 104 (rejecting a facial challenge under the Common Benefits Clause). They do not contend that § 3103 arbitrarily limits subdivision review for community facilities. See Brigham, 166 Vt. at 265. Rather, they appear challenge to the constitutionality of § 3103 and its definition of "community facilities" as applied to the Project. Appellants suggest that, because the City may reserve up to 200 of the 348 proposed parking spaces for Capitol Plaza, the City is favoring a private entity over others in the community and should not be allowed to "shield" the Project from subdivision review.

Appellants have not shown how the application of § 3103 in this case creates any meaningful distinction between themselves and other similarly situated persons or, to the extent it is relevant, favors this Project over other community facilities. See id.; Oxx v. Vermont Dep't of Taxes, 159 Vt. 371, 376 (1992) ("A statute is unconstitutional, as applied, if it treats similarly situated persons differently and the different treatment does not rest upon some reasonable consideration of legislative policy."). Appellants cite only one case, In re Town Highway No. 20, which held that a town selectboard acted unconstitutionally by exhibiting "relentless bias against

[one landowner] and favoritism toward [another]." In re Town Highway No. 20, 2012 VT 17, ¶ 44, 191 Vt. 231.  The argument seems to be that applying § 3103 here is similar to the selectboard's actions in Town Highway No. 20: there, the town protected the interests of some residents over others, and "[h]ere, the City seeks to protect the interests of Capitol Plaza . . . by denying Appellants the public safety protection they would otherwise receive [through subdivision review]."

We fail to see how the alleged benefit to Capitol Plaza or the City's decision to work with a private entity relates to the application of § 3103 and the standards or limits of municipal subdivision review.  Applying § 3103 in this case does not create the differential treatment that Appellants imply: they would not "otherwise receive" the purported protection of additional subdivision review, because review would be limited regardless.  The fact that the City may reserve parking spaces is not what determines the Project's status as a "community facility."  See UDR § 3103.  If a facility is owned and operated by the city, § 3103 applies. UDR § 3103.B.  Thus, subdivision review would be limited even if every space was open for public use.[3]

c. *Appellants' Questions as Limited by UDR § 3103.A*

We have concluded that § 3103 governs the scope of review in this case and limits subdivision regulation as well as site plan regulation.  We now turn to the UDR and Appellants' amended questions in both dockets to determine which issues remain.[4]  Under § 3103, the Project is subject to regulation with respect to:

---

[3] Reading between the lines of Appellants' argument, they appear to question the City's decision to propose the Project.  The scope of our review, and thus our subject matter jurisdiction, is generally confined to those issues the municipal panel below had the authority to address when considering the original application.  See In re Torres, 154 Vt. 233, 235 (1990) ("The reach of the superior court in zoning appeals is as broad as the powers of a zoning board of adjustment or a planning commission, but it is not broader.").  Our review is further limited by Appellants' Statement of Questions.  In re Jolley Assocs., 2016 VT 99, ¶ 15, 203 Vt. 98.  Nothing in Appellants' Statement of Questions in either docket could be construed as challenging the City's decision to pursue the Project.  We review whether the Project complies with the relevant regulations, not whether the City's decision to pursue a project was proper.  Though Appellants may take issue with the reasons behind the proposal, those issues have no relevance to the application before this Court.

[4] At the Court's direction, Appellants filed an Amended Statements of Questions clarifying the issues to be decided in these appeals.  As explained in our February 4, 2020 decision, the amendments add specificity but do not exceed the scope of the original questions.  In the February 4 decision, we construed the amended questions to clearly identify the UDR provisions at issue.  We will consider the amended questions in each docket, as interpreted by the February 4 decision.

11

> [L]ocation, size, height, building bulk, yards, courts, setbacks, density of buildings, off street parking, loading facilities, noise, lighting, landscaping, and screening requirements.

UDR § 3103.A. Even then, municipal regulations are applicable "only to the extent that [they] do not have the effect of interfering with the intended functional use" for the Project. UDR § 3103.A. "[I]f the Questions presented do not correlate to [municipal] regulations that relate to the aspects listed [in § 3103]," they are outside the scope of our jurisdiction. See Town of Charlotte Recreational Trail, No. 98-5-08 Vtec, slip op. at 10 (Vt. Super Ct. Envtl. Div. Feb. 14, 2011) (Durkin, J.). In its Motion for Summary Judgment on the Scope of Review, the City asks us to dismiss Questions 1, 5, and most of Questions 3 and 4 in Docket No. 3-1-19 Vtec (subdivision), along with parts of Question 2 In Docket No. 4-1-19 Vtec (site plan).[5]

1. Amended Question 1 (3-1-19 Vtec)

Amended Question 1(1) asks: "Will the proposed subdivision conform to § 3503.A, as limited by § 3103?" UDR § 3503.A requires that "the land . . . shall be suitable for use without endangering public health or safety, and causing undue adverse effects on the environment, neighboring properties or the character of the area." The City argues that § 3503 is entirely outside the scope of our review as limited by § 3103. We cannot agree. We have held that bylaws like § 3103 allow us to consider a proposal's impacts relative to broad concepts like "the character of the area," but only "to the extent that the effect relates to the [limited] review criteria." See In re Waitsfield Well House CU Application, No. 49-4-12 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Jan. 18, 2013) (Durkin, J.). On the facts before us we cannot determine whether any impacts to the character of the area relate to reviewable aspects of the subdivision such as size or general location. See id. at 4; UDR § 3103.A (listing "location" and "size" as reviewable criteria); Town of Charlotte Recreational Trail, No. 98-5-08 Vtec at 9 (Feb. 14, 2011) (finding that "location" means the general location within a town). As such, the City is not entitled to summary judgment on Amended Question 1(1). See In re Miller Subdivision Final Plan, 2008 VT 74, ¶ 10,

---

[5] The issues raised in Appellants' original questions correspond with the amended questions, thus we will consider whether to dismiss Amended Questions 1, 5, and most of 3 and 4 in Docket No. 3-1-19 Vtec, along with parts of Amended Question 2 in Docket No. 4-1-19 Vtec.

184 Vt. 188 (finding that "summary judgment was inappropriate" in part because the court below lacked sufficient information to make a determination).

Amended Question 1(2) asks: "Will the proposed subdivision conform to § 3503.B, as limited by § 3103?" Section 3503.B requires applicants to show that "appropriate measures shall be taken to overcome the physical limitations" of "[l]and subject to periodic flooding, poor drainage, inadequate capability to support development or other hazardous conditions." UDR § 3503.B. This regulation does not "relate to" any of the reviewable criteria under Section 3103. See Town of Charlotte Recreational Trail, No. 98-5-08 Vtec at 10 (Feb. 14, 2011); UDR § 3103.A. While § 3503.A considers a subdivision's impact on the character of the area, and thus requires us to evaluate various aspects of the proposal, § 3503.B sets forth requirements for "lands subject to . . . hazardous conditions." UDR § 3103 does not allow regulation with respect to "flooding, . . . drainage, . . . capability to support development[,] . . . other hazardous conditions," or "physical limitations." See UDR § 3503.A; see UDR § 3103.A. This issue is therefore outside the scope of our review as a matter of law.

For the reasons stated above, the City's motion for summary judgment is **DENIED** with respect to Amended Question 1(1) and **GRANTED** with respect to Amended Question 1(2).

2. Amended Question 3 (3-1-19 Vtec)

Amended Question 3(1) asks: "Will the proposed subdivision conform to § 3505.A(1), as limited by § 3103?" UDR § 3505.A(1) requires the applicant to design the subdivision "[t]o follow and extend the planned settlement pattern (including lot size, lot configuration, and building location) as defined by the purpose and standards of the applicable zoning district to the maximum extent feasible." The City suggests that most of § 3505 is outside the scope of review, yet the regulation implicates "lot size" requirements and the City appears to concede that lot size is reviewable. Though the application may be quite limited, we conclude that § 3505.A(1) is within the scope of review. See UDR § 3103.A (listing "size" among the reviewable criteria). The City's motion for summary judgment is therefore **DENIED** as to Amended Question 3(1).

Amended Question 3(2) asks: "Will the proposed subdivision conform to § 3505.A(2), as limited by § 3103?" UDR § 3505.A(2) requires the applicant to design the subdivision "[t]o connect to and extend existing street, sidewalk, path, trail, utility, greenway, and open space

13

corridors to the maximum extent feasible." We find no requirements here which "relate to" reviewable criteria under § 3103. See Town of Charlotte Recreational Trail, No. 98-5-08 Vtec at 10 (Feb. 14, 2011); UDR § 3103.A. Nothing in § 3103 allows us to evaluate the Project's connectivity with "existing . . . corridors" or to require the City to build extensions to any of the listed features. See UDR § 3505.A(2) 3103.A. Appellants appear to argue that we can review the Project's yards, courts, and landscaping to determine compliance with § 3505.A(2) and connectivity with an existing recreation path. We agree that yards, courts, and landscaping are reviewable, but requirements for "street, sidewalk, path, trail, utility, greenway, [or] open space corridors do not relate to those criteria. UDR § 3505.A(2); see UDR § 3103.A. Thus, § 3505.A(2) is outside the scope of review and the City's motion is **GRANTED** as to Amended Question 3(2).

3. Amended Question 4 (3-1-19 Vtec)

Amended Question 4(1) raises tree planting requirements under UDR § 3506.A(14). The City has not asked for summary judgment on this issue.

Amended Question 4(2) asks whether the proposed subdivision will conform to all subsections of § 3506.B, setting forth requirements for "pedestrian and bicycle access" including sidewalks, paths, and bicycle facilities. UDR §§ 3506.B(1)–(3). The City suggests that these requirements are outside the scope of review. We agree. Sidewalks, paths, and bicycle facilities do not relate to the subdivision's "location, size, height, building bulk, yards, courts, setbacks, density of buildings, off street parking, loading facilities, noise, lighting, landscaping, [or] screening" See UDR § 3103.A; Town of Charlotte Recreational Trail, No. 98-5-08 Vtec at 10 (Feb. 14, 2011) (stating that the Court must determine whether the regulations "relate to" the reviewable criteria). As such, we must conclude that the requirements are "beyond the scope of our jurisdiction to address." Town of Charlotte Recreational Trail, No. 98-5-08 Vtec at 10 (Feb. 14, 2011). The City's motion for summary judgment is therefore **GRANTED** as to Amended Question 4(2).

4. Amended Question 5(1) (3-1-19 Vtec)

Amended Question 5(1) asks: "Has the applicant demonstrated that the proposed subdivision will be "compatible with the character of the neighborhood under §§ 3507.A and

B(3), as limited by § 3103?"  The City claims that § 3507 is outside the scope of review as limited by § 3103, but we cannot grant summary judgment at this stage.  Consistent with our holding in In re Waitsfield Well House, the subdivision's compatibility with the character of the neighborhood is reviewable "to the extent that [it] relates to the . . . criteria contained" in § 3103.  See In re Waitsfield Well House CU Application, No. 49-4-12 Vtec at 4 (Jan. 18, 2013); UDR § 3103.A.  We cannot determine how the subdivision's impact on the character of the neighborhood may relate to reviewable criteria, such as "height," without further factual development.  See UDR § 3103.A; See Miller Subdivision, 2008 VT 74, ¶ 10.  The City's motion is therefore **DENIED** as to Amended Question 5(1).

5.  Amended Question 2(a) (4-1-19 Vtec)

Amended Question 2(a) asks: "Will the project conform to the setback requirements set forth in Chapter 210, Figure 2-01, as limited by § 3103?"  The City asks us to dismiss "challenges to the standards in [UDR] Chapter 210 that are beyond the scope of review under [UDR] § 3103.A."  UDR Figure 2-01 establishes river setback requirements, and setbacks are listed among the reviewable criteria under Section 3103.  UDR § 3103.A.  Thus, the City is not entitled to summary judgment on this issue.  The City's motion is **DENIED** as to Amended Question 2(a).

6.  Amended Question 2(b) (4-1-19 Vtec)

Amended Question 2(b) asks: "Will the project conform to the standards found under §§ 2201.D(1), D(2), and D(7), as limited by § 3103?"  UDR § 2201.D and its subparts govern the "Design Control Overlay District" and list several factors for the "Design Review Committee" to consider when evaluating projects.  The City argues that none of the subparts raised here are proper subjects of regulation under the limitations of § 3103.  We begin with § 2201.D(1) which considers the "[p]reservation or reconstruction of the appropriate historic style."  Regulation of a specific architectural style does not relate to any of the reviewable criteria under § 3103.  See UDR § 3103.A.  As such, we conclude that § 2201.D(1) is outside the scope of review.  The other subparts, however, may implicate reviewable issues.

UDR § 2201.D(2) considers the "[h]armony of exterior design with other properties in the district."  While it is narrower than the "character of the area" standard, this provision asks the

Court to consider the Project's attributes in relation to its surroundings. UDR § 3103 does not allow regulation of a particular building style or aesthetic, but here the provision does not specify which aspects of the exterior design are relevant. Thus, it fits into our holding in Waitsfield Well House and may apply to the extent that Appellants challenge attributes such as size or height. See In re Waitsfield Well House CU Application, No. 49-4-12 Vtec at 4 (Jan. 18, 2013); UDR § 3103.A. We reach the same conclusion with respect to § 2201.D(7), which considers "[r]ecognition of and respect for view corridors and significant vistas." UDR § 2201.D(7). On the facts before us, we cannot render a summary judgment as to §§ 2201.D(2) or D(7). See Miller Subdivision, 2008 VT 74, ¶ 10. The City's motion is **GRANTED** as to § 2201.D(1) and **DENIED** as to §§ 2201.D(2) and D(7).

7. Amended Question 2(c) (4-1-19 Vtec)

Amended Question 2(c)(1) asks: "Will the project comply with §§ 3002.G, 3005.D, and 3005.E, pertaining to setback from the river, as limited by § 3103?" UDR § 3002.G adopts the setbacks set forth in Chapter 210, Figure 2-01 for the Urban Center 1 (UC-1) Zoning District. We concluded that setbacks are reviewable in our discussion of Amended Question 2(a) above, and the City does not argue otherwise. See UDR § 3103.A (allowing regulation with respect to "setbacks").

UDR § 3005 pertains to "riparian areas," a subject which the City contends is outside the scope of review. As relevant here, § 3005.D states that "all development is prohibited in the riparian area" and sets certain "riparian buffer" requirements, while § 3005.E requires applicants to "establish or maintain a riparian buffer of natural woody vegetation" within water setback areas. On the facts before us, we cannot grant summary judgment for the City. Although "riparian areas" or "buffers" are not reviewable criteria under § 3103, the regulations appear to contemplate "setbacks" and "landscaping" to a limited degree. See UDR §§ 3005.D, E; UDR § 3103.A. We will determine the applicability of §§ 3005.D and E once the relevant facts have been established. The City's motion is therefore **DENIED** as to Amended Question 2(c)(1). The City has not asked for summary judgment on the regulations at issue in Amended Question 2(c)(2).

8. Amended Question 2(d) (4-1-19 Vtec)

Amended Question 2(d)(1) asks: "Will the project, including the Heney Lot, comply with the minimum width and internal walkway standards of §§ 3202.A and 3202.B, as limited by §3103?" UDR § 3202.A governs bicycle access, stating that the DRB "may require . . . designated bicycle lanes or paths" of certain widths. UDR § 3202.B governs pedestrian access and requires applicants to provide sidewalks and "walkways" connecting to existing infrastructure. The City argues that § 3103 prevents us from applying these regulations, and we agree. Pedestrian walkways and bicycle lanes or paths do not relate to the Project's "location, size, height, building bulk, yards, courts, setbacks, density of buildings, off street parking, loading facilities, noise, lighting, landscaping, [or] screening" See UDR § 3103.A; Town of Charlotte Recreational Trail, No. 98-5-08 Vtec at 10 (Feb. 14, 2011). The regulations are outside the scope of review, and therefore the City's motion is **GRANTED** as to Amended Question 2(d)(1). The City has not asked for summary judgment on the regulations at issue in Amended Question 2(d)(2).

II.    Appellants' Cross-Motion for Summary Judgment

Appellants' cross-motion initially requested summary judgment on four issues which we paraphrase here:

(1) the subdivision proposal would create a new lot without road frontage, in violation of subdivision regulations.
(2) the site plan proposal would lead to construction and use on a lot without road frontage, in violation of development regulations.
(3) the subdivision and site plan proposals would create a new lot and provide parking for uses on a different lot, but the required shared parking plan was not submitted.
(4) The Heney Lot is a prior nonconforming use, and the site plan proposal would substantially alter the lot without bringing it into conformance.

Appellants have withdrawn issue (3) regarding shared parking plans. In considering the remaining issues, we adhere to our ruling that UDR § 3103 governs the scope of review in this case and limits review of the City's subdivision and site plan applications.

17

a. *Compliance with Subdivision Standards: Frontage*

Appellants' motion argues that the Project does not comply with § 3505.B(1) of the subdivision standards, which states that "[t]he applicant shall design the subdivision . . . so that all lots front on a street." UDR §§ 3505.B, B(1). Appellants amended their Statement of Questions in the subdivision appeal and removed any reference to § 3505.B(1). Our review is limited to the issues set forth in, or intrinsic to, the Statement of Questions. In re Jolley Assocs., 2016 VT 99, ¶ 15, 203 Vt. 98. Therefore, § 3505.B(1) is no longer before the Court. Appellants' motion is **MOOT** as to this issue.

b. *Compliance with General Development Standards: Frontage*

Appellants also seek summary judgment in the site plan appeal, Docket No. 4-1-19 Vtec, based on the frontage requirement set forth in UDR Chapter 210, Figure 2-01. Appellants amended their Statement of Questions and removed any reference to the Figure 2-01 frontage requirement. For the reasons stated in the section above, Appellants' motion is **MOOT** as to this issue.

c. *The Heney Lot's Compliance with General Development Standards*

Appellant's final argument relates to the City's site plan application. The proposed location for the Project includes a portion of the Heney Lot, a pre-existing parking lot which the City currently leases from the Lawrence P. Heney Family Trust and the Mary M. Heney Family Trust. Section 3011.J of the general development standards requires nonconforming parking areas to "come into conformance with" applicable regulations "to the maximum extent feasible . . . when there is . . . a substantial change to the site layout, access and circulation." UDR § 3011.J. Appellants assert that the Heney Lot is nonconforming, and that the proposed site plan creates a "substantial change" without bringing the lot into conformance. The parties agree that the issue is within the scope of review because § 3103 allows for regulation of "off street parking." See UDR § 3103.A.

While the parties also agree that the Heney Lot does not conform to all UDR standards, they disagree as to what the UDR requires. There is a factual dispute over whether the Project will create a "substantial change" under Section 3011.J, and the City argues that more facts are

necessary to determine what "feasible" adjustments could be made to bring the lot into conformance. See UDR § 3011.J.  Appellants' subsequent filings suggest that the questions surrounding the Heney Lot "must await completion of discovery and then trial."  We find that there is a genuine dispute as to the Project's impacts on the Heney Lot and the feasibility of any site plan modifications.  Appellants have not provided sufficient evidence for us to rule on this issue as a matter of law, and their motion for summary judgment is therefore **DENIED** as to the Heney Lot.

III.    Appellants' Motion for Summary Judgment on Sidewalk Requirements

Following their cross-motion, Appellants filed a motion for summary judgment stating that the Project would create streets without sidewalks in violation of UDR § 3506.B(1).  See UDR § 3506.B(1) ("[A]pplicants shall install sidewalks along both sides of new streets.").  In our discussion of Amended Question 4(2) (Docket No. 3-1-19 Vtec) above, we concluded that the sidewalk requirements under § 3506.B(1) are outside the scope of our review as limited by § 3103.  Appellants' motion for summary judgment is therefore **MOOT**.  To the extent Appellants suggest that the City has recently made material changes to its proposal for the Project, the specifics of the proposal before the Court have not been established.  We will address Appellants concerns, as needed, after further factual development.

**Conclusion**

For the reasons set forth above, we conclude that the Project is a "community facility" under 24 V.S.A. 4413(a) and UDR § 3103.  The Project is therefore entitled to limited municipal review. UDR § 3103 governs the scope of review and the application of municipal regulations in this case. The City's Motion for Summary Judgment on the Scope of Review is **GRANTED** in part and **DENIED** in part.  Appellants' Cross-Motion for Summary Judgment is **DENIED**.  Appellants Motion for Summary Judgment on sidewalk requirements is **MOOT**.

In Docket No. 3-1-19 Vtec we **DISMISS** Amended Questions 1(2), 3(2), and 4(2).  Remaining before the Court are Amended Questions 1(1), 3(1), 4(1), and 5(1).

In Docket No. 4-1-19 Vtec we **DISMISS** Amended Question 2(b) as it relates to UDR § 2201.D(1), and we **DISMISS** Amended Question 2(d)(1).  Remaining before the Court are

Amended Questions 2(a), 2(c), and 2(d)(2), along with Amended Question 2(b) as it relates to UDR §§ 2201.D(2) and D(7).

Electronically signed on February 10, 2020 at 11:10 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division